SAMUEL GORDON EL, Jr., BY HIS NEXT FRIEND, HIS
FATHER, SAMUEL GORDON EL, Sr., PETITIONER-
RESPONDENT, v. NEWARK STAR-LEDGER, ALSO
KNOWN AS NEWARK MORNING LEDGER CO., AND
LIBERTY MUTUAL INSURANCE COMPANY, RESPOND-
ENTS-PROSECUTORS.

Submitted October 4, 1943—Decided January 28, 1944.

Before Justices PARKER, HEHER and PERSKIE.

For the prosecutor Newark Star-Ledger, *Osborne, Cornish
& Scheck (Ervin S. Fulop,* of counsel).

For the prosecutor Liberty Mutual Insurance Company, *John W. Taylor.*

For New Jersey Press Association, *amicus curiæ, Carey & Lane* (*Robert Carey* and *Harry Lane,* of counsel).

For the respondent, *Fox & Krieger* (*Harry Krieger,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. This is a workmen's compensation case. *R. S.* 34:15–7, *et seq.* The basic question for decision on the facts of this case is whether petitioner was correctly adjudged to have suffered a compensable accident, or whether petitioner should have been adjudged not to have suffered such an accident because, as urged for prosecutors, his employer and its insurance carrier, petitioner was "engaged" in one or more of the activities set down in *R. S.* 34:15–36, paragraph 3, which reads as follows:

"A person engaged in the vending, selling or offering for sale or delivering directly to the general public newspapers, * * * or acting as sales agent or distributor as an independent contractor of or for any such newspaper, * * * shall not be considered an employee within the provisions of this chapter."

Petitioner, a school boy, twelve years of age, employed by prosecutor news company, hereafter referred to as prosecutor, as its "distributor," or as its "route man," under the terms and conditions more fully hereinafter set forth, worked from one of its "district offices" (No. 7) at 20-22 Parkhurst Street, Newark, New Jersey, under the immediate "charge and control" of the branch manager of that office.

On May 7th, 1940, petitioner, after serving the subscribers on his route (No. 715), returned to prosecutor's branch office with an undelivered copy of its paper intended for a prospective subscriber, a Mrs. Todd. According to the petitioner he was directed by the branch manager to deliver this paper to an "unknown house" around the corner, and according to the branch manager he told petitioner, as he was leaving for

home, "to put [the paper] in some house as I asked him to put it in some house where he could come back and get a customer later on." At all events, while allegedly carrying out the stated direction or request, petitioner met with an accident. He suffered "a fracture about two and one-half inches above the knee" of his right leg and as a result of the "overriding" and "everything that goes with that type of a fracture, there has been [among other things] a shortening of the right leg."

Petitioner, by his next friend, his father, filed an employee's claim petition for compensation. Prosecutor by its answer denied that petitioner had sustained an accident which arose out of and in the course of his employment, and denied that he was an employee within the meaning of the act. Prosecutor further raised the defenses that petitioner was not an employee because he was engaged in the activities set down in *R. S.* 34:15–36, paragraph 3, and that he was not employed contrary to the Child Labor Law. *R. S.* 34:15–10.

This case has been before the Workmen's Compensation Bureau (hereinafter referred to as the Bureau) and the Essex County Court of Common Pleas (hereinafter referred to as the Pleas) on two separate occasions with the same results in each tribunal.

On the first occasion in the Bureau, pursuant to stipulation, evidence was to have been adduced solely on the question of the liability. Presentation of evidence as to the "extent of liability" was made to abide the determination of liability. Evidence was adduced *extra* the stipulation. On the evidence so adduced, the deputy commissioner determined (October 9th, 1941) the issues in favor of the prosecutor. He dismissed the petition.

On appeal to the Pleas, Judge Flannagan held that petitioner was an "employee" and "unquestionably entitled" to the benefits of our Workmen's Compensation Act, that he was not engaged in the activities set down by *R. S.* 34:15–36, paragraph 3, and that the determination that petitioner was not entitled to double compensation was *extra* the stipulation, and, therefore, not properly before the Bureau. He reversed the Bureau and remanded the cause (December 24th, 1941) to

it for the taking of further evidence and for a determination of all other issues including "the one of double compensation." See *El* v. *Newark Star-Ledger,* 20 *N. J. Mis. R.* 27; 24 *Atl. Rep.* (2d) 568.

Prosecutor's application for a writ of *certiorari* to review this order (December 24th, 1941) was denied, by Mr. Justice Parker, without prejudice to the prosecutor's right to renew the application after a final judgment.

On the second occasion in the Bureau, the same deputy commissioner, who heard the cause in the first instance, presided. The case was re-tried in its entirety. The parties offered proofs in support of their respective contentions. The proofs were in sharp conflict. On these proofs, the deputy commissioner determined that petitioner was an "independent contractor" and not "an employee" within the meaning of the Workmen's Compensation Act, that petitioner's injuries were not the result of an accident which "arose out of and in the course of his employment" because, as he found, "the accident happened at a time when petitioner was not engaged in delivering papers but was on his way home, or going elsewhere, on a bicycle with another boy," and that petitioner's "employment" was not in "violation of the Child Labor Law of this state" since petitioner's "occupation [was] expressly authorized by the legislature." In short, he adhered to his first determination and again dismissed the claim petition.

On appeal to the Pleas, Judge Flannagan again considered and determined this case. Again he adhered to his first determination. Additionally, he determined that petitioner was not "skylarking," that his employment was contrary to the Child Labor Law and therefore petitioner was entitled to double compensation. By the determination and rule for judgment entered March 17th, 1943, the judge awarded petitioner double compensation. *El* v. *Newark Star-Ledger,* 21 *N. J. Mis. R.* 57; 30 *Atl. Rep.* (2d) 523.

The writ allowed to prosecutor and its carrier, by Mr. Justice Parker, challenges the propriety of the determinations and rules for judgment entered by Judge Flannagan under dates of December 24th, 1941, and March 17th, 1943.

Prosecutor's challenge is made to rest upon the same grounds which they urged below in support of their denial of liability.

We think that the challenge is without merit.

We shall state our own independent appraisal of the facts, and the law applicable thereto, as we consider the points argued which we think require decision.

1. Clearly, the accident was the result of a risk which might reasonably have been contemplated by the parties as incidental to petitioner's employment. For the risk was one that belonged to or was connected with that which petitioner was to do, or was called upon to do, in order to fulfill, as we think, his contract of employment. *Cf. Bird* v. *Lake Hopatcong Country Club,* 119 *N. J. L.* 416; 197 *Atl. Rep.* 282. Petitioner admittedly was under the immediate "charge and control" of prosecutor's branch manager. This control of petitioner, under the circumstances exhibited, with respect to the incident out of which his injuries arose, constituted the relation of master and servant. *Cf. Rojeski* v. *Pennington Dairy Farms, Inc.,* 118 *N. J. L.* 335, 337; 192 *Atl. Rep.* 746. Prosecutor's branch manager was naturally concerned with increasing the circulation of prosecutor's newspapers. To that end, and in accordance with the contract between the parties, petitioner was "expected to maintain a minimum number of patrons to yield satisfactory income," and petitioner was "advised" to make periodical visits to "non-patrons on his territory." The fact is that petitioner could and did solicit new customers outside of his territory, for which he received added compensation, even though such customers were thereafter served by another "route man" in whose zone such customers lived. It is not a good answer for prosecutor to say, as it does, that its branch manager was without authority to employ petitioner. The branch manager was clothed by prosecutor with apparent, if not express authority. Pursuant to that authority, the branch manager did in fact employ petitioner. Prosecutor is "bound by the authority which [its] agent was held out to possess." Petitioner was acting under the "order [however characterized] of his immediate superior [at the time of the accident] and in so doing

acted within the scope of his employment." *Cf. Wilkerson* v. *Steinberg & Spielfogel, Inc.,* 129 *N. J. L.* 342, 344; 29 *Atl. Rep. (2d)* 714. Thus whether prosecutor's branch manager "asked" or "directed" or "ordered" the delivery of the paper, petitioner, injured while so doing was acting within the scope or sphere of his employment. Had he refused to do so, his employment might well have been terminated. *Cf. Bird* v. *Lake Hopatcong Country Club, supra.*

2. Nor did the agreement between the parties and their conduct thereunder change the stated relationship between the parties of master and servant to that of employer and independent contractor. The determinative factors distinguishing the two relations are settled.

Where the "employer retains the right to direct the manner in which the [work] shall be done, as well as the result to be accomplished" then the relation of master and servant exists. But where the one employed contracts to do the work "according to his own methods" and is not subject to the "control of his employer as to the means by which this result is to be accomplished, but only as to the result of the work," then the relation of employer and independent contractor exists. *Cf. Errickson* v. *F. W. Schwiers, Jr., Co.,* 108 *N. J. L.* 481, 483; 158 *Atl. Rep.* 482; *Schomp* v. *Fuller Brush Co.,* 124 *N. J. L.* 487, 491; 12 *Atl. Rep. (2d)* 702; *affirmed,* 126 *N. J. L.* 368; 19 *Atl. Rep. (2d)* 780; *Wadge* v. *Crestwood Acres, Inc.,* 128 *N. J. L.* 551; 27 *Atl. Rep. (2d)* 148; *affirmed,* 129 *N. J. L.* 400; 29 *Atl. Rep. (2d)* 896.

With these distinctions in mind, let us briefly analyze the contract between the parties and their action thereunder.

On October 27th, 1940, that which purports to be an "Independent Distributor Agreement" was apparently signed by petitioner although he and his mother deny that it is his signature. It was signed by petitioner's mother, but not by his father. It was not signed by or for the prosecutor although it was witnessed by its branch manager who employed petitioner and under whom petitioner worked. We pass over the challenged validity of this purported contract on the grounds that it was not signed properly or by the proper parties. It is true that this contract, most generally stated,

characterizes petitioner as prosecutor's "distributor," as an "independent contractor." As a "distributor," petitioner agreed, *inter alia*, to purchase prosecutor's papers at its "wholesale prices" and to re-sell same at "retail prices," to make "deliveries" and "collect" money therefor, in such territory as may be assigned to him by prosecutor, and to make weekly accountings. But it is also true that, save as to petitioner's "discretion" as to the "mode or manner" in which he was to "reach his readers" and "transport his papers," prosecutor exercised complete control over petitioner although such control is characterized as action by prosecutor's "agents" in an "advisory capacity," or as action by prosecutor in the role as "agent" for petitioner. And if prosecutor desired to increase the earnings of petitioner, to encourage him, it reserved the right to offer him "prizes, either in the form of cash, merchandise, scenic trips, or outings." These are hardly the attributes of the relation of employer and independent contractor.

But be that as it may, we are not so much concerned with the formal wording of the instrument characterizing the status of the parties as we are with the factual relation between the parties, the true determinative of their status.

The proofs clearly establish that following petitioner's employment, prosecutor's branch manager took petitioner "around the route," assigned to him (No. 715), "showed" him "how to deliver the papers," "where to put [the] papers" and "where to make the deliveries." Thereafter petitioner was put on his own. He was given a book, prepared by prosecutor's branch manager, which contained the names and addresses of prosecutor's customers, sixty in number, who lived in the zone embraced on petitioner's route and whom petitioner was to serve and did serve prosecutor's papers on every day of the week including Sunday. Upon the payment of twenty cents petitioner was provided by prosecutor with a canvas bag, in which he carried the papers, on the outer side of which was printed *Newark Star Ledger*. Petitioner, save on the day of the accident when he was given sixty-one papers, was given only sixty papers to deliver to the like number of prosecutor's customers on his route.

In addition to making the stated deliveries and soliciting new customers, petitioner was obliged to and did make weekly collections from the customers at retail prices, namely, three cents for each daily paper and ten cents for each Sunday paper. Additionally, and *extra* his purported written undertaking, petitioner was obliged to, and did, make weekly collection of premiums (two cents a week) from some of prosecutor's subscribers on his route, and to whom prosecutor had sold an "accident policy" apparently pursuant to a plan of attracting customers for its papers. There is no suggestion much less proof that petitioner received any added or special compensation for this *extra* service.

It is interesting to observe that prosecutor supplied petitioner with form of receipts for his collections. On the back of the receipts, petitioner is characterized as a "little merchant" in business for himself. And immediately following that characterization, it again gives evidence of control. It invites its subscribers to complain directly to its "circulation department" if petitioner's service is unsatisfactory.

Enough has been written to demonstrate that however petitioner may have been characterized by words, he was, in fact, nothing more than a boy who before school hours served a newspaper route for prosecutor and did so under the immediate "charge and control" of prosecutor. The relation between them was that of master and servant.

3. Do the proofs establish that petitioner, as urged, was "skylarking" at the time of the accident? *Cf. Hulley* v. *Moosbrugger,* 88 *N. J. L.* 161; 95 *Atl. Rep.* 1007; *L. R. A.* (1916C) 1208. Our answer is in the negative. No such defense was set down in prosecutor's answer to the claim petition. The applicable law is clear. Where prosecutor seeks to avoid liability for a cause for which it is not responsible, then the burden is upon it to "show such cause." *Atchinson* v. *Colgate & Co.,* 3 *N. J. Mis. R.* 451, 452; 128 *Atl. Rep.* 598; *affirmed,* 102 *N. J. L.* 425; 131 *Atl. Rep.* 921. *Cf. Pierce* v. *Jersey Central Power and Light Co.,* 127 *N. J. L.* 71, 73; 21 *Atl. Rep.* (2d) 311. The testimony of petitioner is that he was walking "alongside the bicycle" which his boy friend was riding at the time of the accident. He is corroborated by his boy friend. The passenger in the

car involved in the accident, testifying for prosecutor, said that "the boy [petitioner] that got hurt was sitting side saddle, sidewise on the running board, on the side seat, on the running board." The driver of the car, testifying for prosecutor, said that petitioner was "sitting on the cross-bar." Prosecutor's branch manager testified that petitioner "got on the bars, on the handle bars," in front of the branch office, but he did not see the accident. Petitioner denied that he admitted to the branch manager that he was riding on the bicycle.

Assuming, but not deciding, that prosecutor's version of the manner in which petitioner was riding may be classified as "skylarking," prosecutor has utterly failed to carry its burden of proof.

4. Having determined that the only relation (however otherwise characterized) that existed between the parties was that of master and servant and not that of employer and independent contractor, and that petitioner was not "skylarking" at the time of the accident, the question still remains to be decided, namely, whether, as argued, petitioner was engaged in any of the activities set down in *R. S.* 34:15–16, paragraph 3.

Clearly, petitioner was not engaged in "vending, selling, or offering for sale" prosecutor's newspapers. *Cf. Crawford v. Newark Star Publishing Co.,* 15 *N. J. Mis. R.* 77, 78; 188 *Atl. Rep.* 731. We so find. It is equally clear that he was engaged to deliver newspapers for prosecutor to a specifically named and fixed number (60) of its subscribers. Petitioner so delivered these papers. In the Pleas, Judge Flannagan considered that in so doing petitioner was not engaged in "delivering [prosecutor's papers] to the general public." For, in his opinion, those sixty subscribers "formed a class distinguished from the [general] public." Were we of the mind that the accuracy of this determination was necessary, we are inclined to think that it was correct. But we are not so minded. For the fact is, and we do find, that the accident did not occur while petitioner was serving any one of prosecutor's subscribers on his route. Rather did the accident occur while petitioner was engaged in the work, which he concededly had the right to do, and which he was

"asked" or "directed" to do, namely, of laying a foundation for his future solicitation of a new subscriber for prosecutor, his employer. What he was doing was not in the nature of a "casual employment." Rather was it work which was definitely within the scope or sphere of his employment. And to solicit a subscription for prosecutor's newspapers does not place petitioner within the exclusion of the statute, *supra. Crawford* v. *Newark Star Publishing Co., supra.*

5. Was petitioner employed contrary to the applicable provisions of the Child Labor Law (*Pamph. L.* 1940, *ch.* 153, *p.* 331), and thus entitled to double compensation? *R. S.* 34:15–10. Our answer is in the affirmative.

Petitioner began his work between 5:00 A. M., and 6:00 A. M., of each day of the week, including Sunday. Because the accident occurred between "7:15 and 7:30 A. M." (May 7th, 1940), prosecutor argues, among other things, that petitioner was not working at the time contrary to the statutory provisions, namely, "* * * nor shall any minor under sixteen years of age be·so employed, permitted, or suffered to work before seven o'clock in the morning * * *." *Pamph. L.* 1940, *ch.* 153, *p.* 333, § 3. Cf. also, sections 2 and 15 of the same statute (section 3, since amended, is now *R. S.* 34:2–21.3; sections 2 and 15 are *R. S.* 34:2–21.2 and 34:2–21.15, respectively). This argument is not sound. The statutory provision for double compensation (*R. S.* 34:15–10) comes into play in the case at hand when in the words of the statute "If the injured employee at the time of the accident is a minor under fourteen years of age *employed* in violation of the labor law * * *." (Italics ours.) Obviously, the test is not whether the injured employee suffered an accident while working after the prohibited hours. Rather is the test whether the injured minor employee was employed in violation of the labor law. Here petitioner was "employed," "permitted or suffered to work before seven o'clock in the morning." He was therefore employed in violation of the Labor Law.

It is however stoutly argued that there is no basis for the finding that petitioner's earnings amounted to $3.85 a week. That is not so. Petitioner testified that he would turn over all his weekly collections to the prosecutor's branch manager

who in turn paid him $4 a week for his services. The branch manager testified that this is not so; that petitioner kept the difference between the retail prices of its papers (three cents for each daily paper and ten cents for each Sunday paper) and the wholesale prices thereof (2-1/6 cents for each daily paper and eight cents for each Sunday paper). Prosecutor, on its own theory that petitioner was an independent contractor, concedes that his weekly profits may have equalled $3.58. But it then argues that there is "no evidence in the case that petitioner received compensation at $3.58 a week from * * * it." In this posture of the proofs, it may well be since petitioner was, even in the absence of any agreement, entitled to be paid what his services were reasonably worth (*Essbee Amusement Corp.* v. *Greenhaus*, 114 *N. J. L.* 492; 177 *Atl. Rep.* 562), that Judge Flannagan determined the figure of $3.58 a week was the reasonable worth of his services. At all events, we so deem that figure.

Thus we have considered and determined all substantial points raised and argued. The writ is dismissed, with costs.