1018

## ELDER v. AETNA CASUALTY & SURETY CO.

No. 12101.

Court of Civil Appeals of Texas. San Antonio.

June 14, 1950.

Rehearing Denied July 12, 1950.

Maverick, Putman & Putman, San Antonio, for appellant.

Carl Wright Johnson, and Nat Hardy, both of San Antonio, for appellee.

NORVELL, Justice.

The question involved in this case is whether or not the appellant, Billy Elder, a newspaper delivery boy on a certain designated route, was a servant of the Express Publishing Company and covered by Workmen's Compensation Insurance. It was the contention of Aetna Casualty & Surety Company, the insurance carrier for the publishing company, that appellant was an independent contractor. The trial court accepted this theory and instructed a verdict for the insurance company. Billy Elder, a minor, by his next friend, brings the case here.

Appellant suffered a broken leg when an automobile came around a street corner and collided with the motor bike upon which he was riding. It is urged that even if Billy Elder be considered a servant of the publishing company, there is no evidence that he was acting within the scope of his employment at the time he was injured. In this connection, we have examined the testimony of appellant as contained in the statement of facts, and come to the conclusion that such testimony if credited by a jury would support a finding that Billy Elder was acting within the scope of his employment when injured. Under the evidence, this was an issue upon which the jury could have found either way and the trial court's action in giving the peremptory instruction must find its support in the premise that appellant was an independent contractor and not the servant of the publishing company.

It may be stated at the outset that the legal occupational status of a deliverer of newspapers or route boy may be either that of an independent contractor or that of a servant, depending upon the particular contract or agreement under which the work is undertaken. The applicable test to determine the relationship of master and servant relates to the retention and exercise on the part of the master of the power to control and direct, not merely the end sought to be accomplished, but also the means and details of the accomplishment. Shannon v. Western Indemnity Co., Tex. Com.App., 257 S.W. 522. "The right to control the mode of doing the work is the principal consideration in determining whether one employed is a servant or an independent contractor." 56 C.J.S., Master and Servant, § 3, page 49.

In this case an attempt was made to define the relationship between the publishing company and appellant by means of a written instrument which contained the following provisions:

"1. The publisher agrees to sell to the carrier and the carrier agrees to buy newspapers for sale to subscribers on Route No. D-3 in San Antonio or vicinity effective 6-15-48. The prices and terms shall be such as are fixed by the publisher from time to time.

"2. No interest in the route is sold to the carrier.

"3. The carrier agrees to pay publisher at its office in San Antonio, Texas, on or before the 5th and 20th of each month for all copies purchased by carrier during the preceding period.

"4. Carrier agrees to furnish to the publisher whenever requested a written list giving the name and address of each subscriber in regular order in which papers are delivered on the route and shall not give any list of subscribers to any other person.

"5. The carrier shall furnish his own equipment and means of conveyance and they shall be under his own exclusive charge and control and the publisher shall have no interest therein.

"6. In case the carrier utilizes the services of others, then he shall keep a record of his employees and fully comply with the Social Securities Act and the State Unemployment Insurance Act and all other laws and City Ordinances.

"7. It is agreed that the sole relationship between the parties is the sale of said papers by the publisher to the carrier and that no other relationship exists except that of seller and purchaser, and the carrier shall not have authority to represent or act for the publisher either as agent or employee.

"8. This contract may be terminated at any time by either party without any prior notice. Upon such termination the carrier shall deliver to publisher all paid-in-advance subscriptions (which publisher will then undertake to fulfill for carrier) and the names and addresses of all subscribers and expiration of their subscriptions and all accounts between publisher and carrier shall be immediately paid."

This agreement on its face purports to be one between principals. The relationship of master and servant is not created by the contract, and under it Billy Elder occupied the position of an independent contractor in relation to the publishing company.

Appellant relies primarily upon evidence of control exercised by the district sales manager over appellant's actions to establish the relationship of master and servant, and suggests that the written contract was a subterfuge on the part of the publishing company to avoid carrying compensation coverage for its route carriers, and at the same time retain and possess the right to control them as to the detailed manner in which they carry out their work.

In our opinion, there is no evidence that the contract was a subterfuge, nor that it had ever been repudiated by appellant or the publisher. It seems undisputed that as to essentials the contract controlled the actions of the parties. Billy Elder received his monetary compensation or profit from his paper delivering activities in accordance with the terms of the contract, and furnished his own means of conveyance. The methods and means employed by him in delivering the papers on his route were

largely left to his discretion. The contention is made that the written instrument did not cover all of the terms of the actual agreement. It is asserted that there is evidence that the district manager of the publishing company determined how many papers Billy Elder should buy to supply subscribers along the route; that an account book was furnished to him by the publisher; that the container or bag used for holding and carrying the newspapers had the publisher's advertisements printed thereon and appellant was required to purchase same from the publisher; that appellant had received instructions from the district manager as to the proper way to deliver papers; that upon occasions the district manager had gotten Billy Elder out of bed and told him to start delivering papers, and had at times instructed him to solicit new subscriptions for the papers of the publishing company. It is urged that these circumstances, coupled with the fact that under the terms of the written contract either party could terminate the same at will, made the relationship one of master and servant, or at least raised a jury question as to the existence of such relationship.

We are of the opinion that the Texas authorities are against appellant's position and support the trial court's action in giving a peremptory instruction. In Carter Publications v. Davis, Tex.Civ.App., 68 S.W.2d 640, 643, wr. ref., a contract for the delivery of newspapers over a certain route between cities was involved. The agreement purported to make the deliverer of papers an independent contractor. The Waco Court held that there was no evidence of a master-servant relationship, and, in an opinion by Judge Alexander, pointed out that "an employer has a right to exercise such control over an independent contractor as is necessary to secure performance of the contract according to its terms and to accomplish the results contemplated thereby without thereby creating the relationship of master and servant, so long as the employer does not destroy the employee's power of initiation nor undertake to control the employee in the means and manner of the performance of the work."

Carter Publications v. Davis was later cited with approval by the Supreme Court in Texas Co. v. Wheat, 140 Tex. 468, 168 S.W.2d 632, reversing the holding of the Court of Civil Appeals to the effect that the evidence was sufficient to take the issue of the master-servant relationship to the jury. Wheat v. Texas Co., Tex.Civ.App., 159 S.W.2d 238. Other Texas cases believed in point are: Dave Lehr, Inc., v. Brown, 127 Tex. 236, 91 S.W.2d 693, and Davis v. General Accident Fire & Life Assurance Corp., Tex.Civ.App., 127 S.W.2d 526. We need not detail the facts upon which the decisions mentioned were based as they are set out in the cited opinions. It is sufficient to say that we regard said authorities as controlling in the disposition of this appeal.

 While, as above pointed out, newsboys or route delivery boys may be either independent contractors or servants, depending upon the particular agreement they have with the publisher, the independent contractor status seems to be the usual position held by them. Particularly is this true when the issue is one of tort liability under the doctrine of respondeat superior, or one of coverage under Workmen's Compensation Acts. This circumstance may be in part explained by the practical impossibility of a publisher's maintaining an effective control over newsboys and route men. Workmen's Compensation Acts, at least in part, grew out of the liability of the master for negligent injuries to his servants. One of the more common bases for liability was the failure of the master to provide a safe place in which the servant could do his work. The workman's remedy by an action for negligence became more illusive than real with the development of the factory system, coupled with no corresponding modification of the common law defenses of contributory negligence, the fellow servant rule and the doctrine of assumed risk. Under the Texas Workmen's Compensation Law, Vernon's Ann.Civ.St. Art. 8306 et seq., the employer failing to provide compensation insurance is deprived of these defenses and the workman who elects to retain his common law right to sue for negligence (in lieu of Workmen's Compensation benefits) takes such right subject

to the defenses mentioned. While Workmen's Compensation Laws have certain social objectives and undoubtedly have a broader purpose than serving as a substitute for the negligent action in effectively securing the workman a safe place to work, yet, as the usual thing, the relationship of master and servant is found where the master retains a large measure of control of the environment and conditions under which the work is to be performed. Likewise there has developed a corresponding concept of industrial responsibility for injured workmen, so that control of environment and industrial responsibility for injury are usually grouped together. On the other hand, where control of the working environment by the employing agency is absent, an independent contractor rather than a servant is more often engaged to accomplish the desired business objective, and the problems arising from injuries to independent contractors are regarded as either the risks of individuals or the burden of society as a whole, rather than the employing unit of industry. The matter of extending insurance coverage to independent contractors must be approached from a social and hence a legislative standpoint. The extension of workmen's compensation benefits to independent contractors by judicial construction can not be justified by the desirable social ends sought to be obtained thereby.

We make the above observations in deference to the earnest and well-prepared arguments presented by appellant in support of a liberal construction of a remedial statute. We believe that in the matters and considerations above stated a distinction may be found between Workmen's Compensation cases and those arising under acts having an admittedly broader social basis, such as unemployment insurance acts, the federal Social Security Act, 42 U.S.C.A. § 301 et seq., and the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. In the case of National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, 857, 88 L.Ed. 1170, the Supreme Court of the United States expressly held that in adopting the Wagner Act, "Congress had in

mind a wider field than the narrow technical relation of 'master and servant,' as the common law had worked this out in all its variations, * * *." This decision makes it clear that the meaning of the term "employee" as used in the National Labor Relations Act is not the same as its meaning in the Texas Workmen's Compensation Act. See also, Journal Pub. Co. v. State Unemployment Compensation Commission, 175 Or. 627, 155 P.2d 570, 579. The adoption of a new state or federal social welfare statute can not properly support a change in the judicially settled meaning of terms employed in a previously existing statute.

While many out of state cases, apparently conflicting, may be reconciled on the facts, a majority and a minority rule nevertheless seems discernible. The majority rule is in accord with Carter Publications, Inc., v. Davis, Tex.Civ.App., 68 S.W.2d 640, wr. ref. Authorities from other jurisdictions seemingly in accord and some citing the Davis case are: Ross v. Post Pub. Co., 129 Conn. 564, 29 A.2d 768; Balinski v. Press Pub. Co., 118 Pa. Super. 89, 179 A. 897; Creswell v. Charlotte News Pub. Co., 204 N.C. 380, 168 S.E. 408; Birmingham Post Co. v. Sturgeon, 227 Ala. 162, 149 So. 74; Bernat v. Star-Chronicle Pub. Co., Mo.App., 84 S.W.2d 429; Oklahoma Pub. Co. v. Greenlee, 150 Okl. 69, 300 P. 684; New York Indemnity Co. v. Industrial Accident Commission, 213 Cal. 43, 1 P.2d 12; Hartford Accident & Indemnity Co. v. Industrial Accident Commission, 123 Cal.App. 151, 10 P.2d 1035.

Some cases, not necessarily in conflict with those above cited because of differing fact situations, but holding newsboys or route delivery boys to be servants are: Hampton v. Macon News Printing Co., 64 Ga.App. 150, 12 S.E.2d 425; El v. Newark Star-Ledger, 131 N.J.L. 373, 36 A.2d 616; Bergeron v. Press Co., 252 App.Div. 716, 298 N.Y.S. 685; Hann v. Times-Dispatch Pub. Co., 166 Va. 102, 184 S.E. 183, in which a distinction is made between newsboys who sell papers on the streets and route delivery boys.

For the reasons stated, the judgment appealed from is affirmed.