JOHN MIRTO, Plaintiff, v. THE NEWS-JOURNAL COMPANY, a corporation of the State of Delaware, Defendant.

(*June* 5, 1956.)

LAYTON, J., sitting.

*C. W. Berl, Jr.,* for the Plaintiff.

*William Prickett* for the Defendant.

Superior Court for New Castle County, No. 397, Civil Action, 1954.

LAYTON, J.:

This is a suit by a plaintiff injured as the result of tripping over a piece of wire left on the sidewalk by a newsboy. The Complaint charges that the newsboy uncoiled the wire wrapping around a bundle of newspapers and negligently left the wire lying on the sidewalk, over which plaintiff tripped and fell, injuring himself severely.

Two questions are presented. The first concerns the sufficiency of the allegations of negligence in Par. 4(a) of the Complaint. The second requires a decision as to whether a newsboy is an agent of a newspaper under the doctrine of *respondeat superior.*

■ Rule 9(b) of the Civil Rules of this Court, *Del. C. Ann.*, requires that in all averments of negligence "the circumstances constituting * * * negligence shall be stated with particularity." Paragraph 4(a) of the Complaint alleges:

"Defendant created an unsafe condition at said intersection and pavement where members of the public (including plaintiff) were likely to walk."

On its face, Paragraph 4(a) fails to set forth the negligence with the particularity demanded by Rule 9(b). Defendant's motion to strike is granted.

■ Turning to the second point, if the newsboy in question were an agent of defendant, it would be liable to plaintiff for injuries resulting from his negligence upon the principle of *respondeat superior*. Defendant takes the position that the newsboy was an independent contractor, not its agent. This presents a question of first instance in this State. There are a number of decisions on the point from other jurisdictions which are not altogether harmonious. In general, Courts seem to base their decisions upon the time-honored, if not altogether satisfactory, tests governing the extent of control exercised over the newsboys.

For the purposes of the disposition of this phase of the case, the following facts may be taken as true:

The News-Journal Company prepares its newspapers for sale and distribution by assembling them into bundles, which are bound by wire. The bundles of newspapers are then delivered to "haulers" who are under contract with the publisher to make deliveries to specified locations in the area of circulation, and said "haulers" use their own vehicles for this purpose. The newsboys who resell the newspapers to the public accept delivery of them at the points where they are left by the haulers. The area of circulation is divided into districts, and district managers, who are salaried employees of the publisher, are responsible for the sale of the newspapers in those districts. The district managers select the newsboys to whom they sell the news-

papers at 3½ cents per copy. The newsboys resell the papers to the public for 5 cents per copy. The newsboys are not entered on the payroll records of the publisher and do not receive any salary or commission from the publisher. Their only compensation is the profit they make by selling the newspapers at a price greater than that which they paid the publisher. The newsboys settle their accounts weekly with the district managers and unsold copies are returnable for a credit of 3½ cents per copy. If the newsboys sell papers to regular customers and the customer's account is delinquent or unpaid, the loss is borne by the newsboy and not by the publisher. The newsboys do not have specifically defined territories in which to sell retail to the public, and there is nothing to prohibit the selling of newspapers wherever they choose. The newsboys are not forbidden to sell newspapers or periodicals other than those of the defendant. The publisher will sell carrying bags and covers for account books to the newsboys, but they are not required to buy them, nor are they furnished free to the newsboys. The district managers do not have any means for controlling the methods by which the newsboys resell the newspapers to the public (such as a penalty of 10 cents whenever a customer complains) except that the district managers can refuse to sell newspapers to any newsboy who proves to be unsatisfactory. Newsboys are not compelled to solicit additional customers in order to increase their territories.

Based upon facts substantially similar to these, (and in several cases considerably less favorable to the defendant's newspaper) the weight of authority is to the effect that the newsboy is an independent contractor. *Balinski v. Press Pub. Co.*, 118 *Pa. Super.* 89, 179 *A.* 897; *Birmingham Post Co. v. Sturgeon*, 227 *Ala.* 162, 149 *So.* 74; *Creswell v. Charlotte News Pub. Co.*, 204 *N. C.* 380, 168 *S. E.* 408; *New York Indemnity Co. v. Industrial Acc. Comm.*, 213 *Cal.* 43, 1 *P.* 2d 12; *Oklahoma Pub. Co. v. Greenlee*, 150 *Okl.* 69, 300 *P.* 684; *Gall v. Detroit Journal Co.*, 191 *Mich.* 405, 158 *N. W.* 36, 19 *A. L. R.* 1164. At least one superficially conflicting decision arising under the unemployment

compensation law of Connecticut may be explained because the particular statute provided tests quite different from those generally applicable to the independent contractor status. *Ross v. Post Publishing Co.*, 129 *Conn.* 564, 29 *A.* 2d 768.

Plaintiff cites *Elder v. Aetna Casualty & Surety Co.*, *Tex. Civ. App.*, 230 *S. W.* 2d 1018; *El v. Newark Star-Ledger*, 131 *N. J. L.* 373, 36 *A.* 2d 616; *Hampton v. Macon News Printing Co.*, 64 *Ga. App.* 150, 12 *S. E.* 2d 425; and *Hann v. Times-Dispatch Pub. Co.*, 166 *Va.* 102, 184 *S. E.* 183 as authority for his proposition. Each of these cases does hold that the newsboy was an agent of the newspaper but a detailed examination of their facts reveals that in every instance the defendant newspaper exercised a far greater measure of control over its newsboys than in the case at bar. For instance, in the *Elder* case, *supra*, the newsboy was directed exactly how to make his deliveries, given a book in which to keep receipts, penalized 10 cents whenever a subscriber complained about a missed delivery, instructed when to begin his deliveries and at what time they had to be finished, urged to go out and get more subscribers for the newspaper and required to purchase a lettered bag in which to carry his papers.

In my judgment, the method and manner of control over the newsboys in this case was of a most limited sort and only for the purpose of insuring in a general way that newspaper deliveries were satisfactorily made. In this connection, the following language from *Bernat v. Star Chronicle Publishing Co.*, *Mo. App.*, 84 *S. W.* 2d 429, 433, is apt:

"The time to be spent at his work was his own, and depended upon the fortuitous circumstances of the particular day; * * *. As regards personal service, he could deliver his papers himself, or else delegate his brother and sister to perform that service for him; the publishing companies being concerned only with the prompt and regular delivery of the papers and timely payment for them at the established wholesale rate. His compensation consisted purely of his profits from the business; he was not carried on the payroll of the company; and the termi-

nation of his relationship with the company was to be brought about, not by his discharge in the ordinary sense, but by the refusal of the publishers to deliver further papers to him and the appointment of another dealer or distributor in his stead.

"Undoubtedly a certain limited right of supervision was exercised or at least reserved to the company so as to enable them to see to it that the final result contemplated by the arrangement was accomplished, but not such right of supervision over the methods, details, and particulars of the work as to give rise to the relationship of employer and employee."

Plaintiff places great emphasis on the fact that the newsboy here occasionally helped the district manager count pennies, clean up a garage which constituted his office and went for rides with him. The entire evidence on this score is as follows:

"A. When I go down to pay my bill to Bogia, sometimes he asked me to come back and clean up the garage next to it.

"Q. And you did do it? A. Yes.

"Q. Does he ever ask you to do anything else for him? A. Well, sometimes when we get done serving, he rides by and asks us if we want to go for a ride with him when he goes around and checks different routes to see if the boys have served.

"Q. Does he ask you to do other things around the office? A. Maybe wrap pennies or something on Saturdays."

I do not regard this testimony as indicative of any substantial degree of control over the newsboys. The occurrences were sporadic rather than regular and there is no proof that the defendant knew about or sanctioned them.

After carefully reviewing the depositions and affidavits, I am of the opinion that these additional facts just discussed are not so significant as to remove this case from that category of decisions holding that newsboys are not agents of the publisher.

Furthermore, since both the newsboys and the "haulers"[1] are independent contractors, I fail to see how the case of *Scorpion v. American-Republican,* 131 *Conn.* 42, 37 *A.* 2d 802 is applicable.[2]

Defendant's motion for summary judgment granted.

---

[1]Trucks operated by an independent contractor to deliver newspapers to drop spots.

[2]Publisher held liable where "hauler", an agent of the publisher, not only delivered papers to drop spots but snipped wire wrappings well knowing that the wire was left on the sidewalk and was a hazard to pedestrians.