81 N.J. Super. 121 (1963)
195 A.2d 22
RUSSELL BUCHNER, ETC., PETITIONER-RESPONDENT,
v.
BERGEN EVENING RECORD, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 30, 1963.
Decided November 7, 1963.
*122 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Horace Banta argued the cause for appellant (Messrs. Winne & Banta, attorneys; Mr. Howard E. Corbett on the brief).
Mr. Roger W. Breslin argued the cause for respondent (Messrs. Breslin & Breslin, attorneys; Mr. Roger W. Breslin, of counsel).
*123 The opinion of the court was delivered by COLLESTER, J.A.D.
Respondent Bergen Evening Record (Record) appeals from a judgment of the County Court affirming an award by the Division of Workmen's Compensation in favor of petitioner Russell Buchner, a newspaper delivery boy, who was injured on February 6, 1958 when struck by an automobile while delivering copies of the Bergen Evening Record to subscribers thereof. Since petitioner was a minor under 18 years of age and had not obtained a working permit prior to his engagement by Record, a double indemnity award was granted pursuant to N.J.S.A. 34:15-10.
Both the Division and the County Court, on appeal, determined that the relationship of employer-employee existed. The happening of the accident, that it arose out of and during the course of the delivery of the newspapers, the quantum of the award, and other incidental requirements for compensability are not in dispute. Respondent argues only that petitioner was not its employee at the time of the accident, but rather was an independent contractor to whom it owed no responsibility under the Workmen's Compensation Act.
Respondent publishes a daily newspaper which has wide circulation in Bergen County. Petitioner, who was only 14 years old at the time of the accident, had been asked by a "district adviser" of respondent to take over an established newspaper delivery route sometime prior to January 14, 1957. Upon his assent, a written agreement prepared by respondent and entitled "Route Lease" was signed by petitioner and his parents on said date. Petitioner was then only 12 years of age. The agreement stated that respondent leased to petitioner a list of subscribers of the newspaper who lived on a specified newspaper route. It contained the following provisions:
"The Carrier agrees:
(1) He will sell and regularly and promptly deliver the Bergen Evening Record to all of said subscribers and such new subscribers on such route as he shall obtain, at the established rate therefor.
*124 (2) He will not sell or deliver any other newspaper or printed matter of any kind to any person without the written consent of the Bergen Evening Record.
(3) He will do all in his power to promote and extend the circulation of the Bergen Evening Record.
(4) Before giving up the said paper route, he will give Bergen Evening Record two (2) weeks' notice of his intention to do so.
(5) He will not show or turn over the list of subscribers to any person or disclose the name or address of any subscriber for the Bergen Evening Record without first obtaining the consent of the Bergen Evening Record.
(6) He has not paid any money to any person for this list of subscribers and he will not sell it to any person or persons for any money or other thing of value.
(7) He will not collect in advance from any subscribers; should he do so, he shall become responsible for any such amount collected in advance.
(8) He will regularly and promptly pay, each week, for all copies of the Bergen Evening Record sent to him in accordance with his orders, at the established wholesale rate.
(9) He agrees that the granting of this lease to him does not constitute the territory covered by the above described route as exclusive terirtory [sic]; and that in the event he is unable to make delivery of the Bergen Evening Record due to illness, vacation, or otherwise, he shall provide a substitute to [sic] his expense.
(10) Bergen Evening Record may cancel and terminate this lease at any time without notice, and in such case, he agrees to turn over, forthwith, to the Bergen Evening Record or its authorized representative a complete list of the names and addresses of all subscribers to whom he has been delivering the Bergen Evening Record.
(11) He further agrees to keep a written list of all such persons with their street addresses in his possession at all times, and such written list shall be the sole property of the Bergen Evening Record."
It further contained a statement signed by petitioner's parents wherein they represented they had explained to petitioner that he was to buy the newspapers at the wholesale rate and sell them at the regular weekly rate instead of delivering the newspapers at a fixed salary; that he would be responsible for all credit and collection losses from the subscribers; and that his earnings would be the net profit between what he paid for the newspapers and the sum he collected for them.
The list of subscribers was furnished to petitioner by the district adviser who showed him the route. The exact number of newspapers required for the route was delivered daily by *125 the adviser, whereupon petitioner would make his deliveries on his bicycle. At the end of the week petitioner would collect the retail price for the papers from the subscribers and pay over the wholesale price therefor to the adviser. The net difference retained by the boy as his "earnings" was approximately $4.50 to $5 per week.
Respondent contends that, by virtue of the lease agreement and the above facts, the boy was an independent contractor and not its employee. It urges that the proofs do not meet the test of the master and servant relationship since they lack the essential element of control as set forth in Wilson v. Kelleher Motor Freight Lines, Inc., 12 N.J. 261 (1953):
"The relationship of master and servant exists `whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or in other words, not only what shall be done, but how it shall be done.'" (at p. 264; citing Cappadonna v. Passaic Motors, Inc., 136 N.J.L. 299 (Sup. Ct. 1947)).
Respondent asserts it did not retain the right to direct the manner in which petitioner was to distribute the newspapers. It alleges that when newspapers were delivered to petitioner its control ceased; that the boy could deliver them on foot or bicycle as he chose; that he was not ordered to deliver them at any particular time or in any specific manner; that depending on his whim, he could throw the papers on porches, lawns, driveways or place them in doors or mail boxes. Petitioner did not wear any identification indicating a relationship with respondent, and no equipment was provided for his use.
As further evidence of lack of control, respondent points out that petitioner was paid no wages and his earnings were based upon his profits, viz., the difference between the wholesale and retail price; that he was responsible for all collections and losses resulting from unpaid bills. The Record did not withhold payments from petitioner's earnings for income taxes, social security or unemployment contributions.
*126 In support of its position respondent relies heavily upon two Pennsylvania Superior Court decisions, Rodgers v. P-G Publishing Co., 194 Pa. Super. 207, 166 A.2d 544 (1960), and Balinski v. Press Pub. Co., 118 Pa. Super. 89, 179 A. 897 (1935), wherein decedents of claimants for workmen's compensation were held to be independent contractors. We find distinguishing factors in Rodgers. There the claimant's decedent was a newspaper distributor under a written contract with the Post Gazette Publishing Co. He provided his own delivery equipment and carriers to make distribution, could determine what he would charge for the papers on resale, was not barred from engaging in other gainful employment, and could use other personnel in the newspaper distribution with a minimum time spent by himself. In Balinski, a case involving a newsboy who "hawked" his wares on a street corner, the court relied primarily on the fact that a vendor-vendee relationship had been established. The latter decision is criticized in 1 Larson, Workmen's Compensation Law, § 44:33(b) (1952), where the author states:
"[T]he reality of the position of a newsboy * * * should not be obscured by the technicalities of payment * * * especially since many other indicia of employment, such as the right to terminate, control of location, furnishing of equipment, and the like, were present." (at p. 649)
On the other hand, petitioner alleges the proofs established the master and servant relationship under the "right to control test" and the "relative nature of the work test." He argues that in the performance of services of delivering the newspapers the newsboy was subject to the general control of the newspaper publisher in every respect save where control was unimportant.
Both sides endeavor to draw sustenance from El v. Newark Star-Ledger, 131 N.J.L. 373 (Sup. Ct. 1944). That case arose before the 1956 repeal of a part of N.J.S.A. 34:15-36, which provided that newspaper delivery boys should not be considered employees under the Workmen's Compensation Act. El, a newsboy, after completing the regular deliveries *127 on his route, was struck by an automobile while delivering a newspaper under the orders of the branch manager for the purpose of "laying a foundation" for his future solicitation of a new subscriber. The Newark Star-Ledger admitted petitioner was under the immediate charge and control of its branch manager. The court held that this control, under the circumstances exhibited, constituted the relation of master and servant.
In determining that the requisite control existed to establish the employment relationship, the court, in El, considered certain factors similar to those appearing in the instant case. There the branch manager took petitioner "around the route," assigned it to him, showed him how to deliver the papers, where to put the papers and where to make deliveries, after which petitioner was "put on his own." He was given a book containing a list of 60 subscribers who lived on his route, and each day was given exactly 60 papers to deliver. A written agreement, described as "Independent Distributor Agreement," was signed by petitioner, wherein he agreed to purchase the newspapers at the wholesale price and to resell at the retail price, to make deliveries and collect the money therefor, and to make a weekly accounting.
However, as pointed out by respondent, there are additional factors in El not found in the matter sub judice. El was required to collect, without compensation, weekly premiums from subscribers who had purchased an accident insurance policy from the newspaper; subscribers were invited to register complaints about deliveries directly to the circulation department; form receipts for collections were supplied El by the newspaper, and a canvas bag in which to carry papers, bearing the name of Newark Star-Ledger, was provided petitioner for a nominal sum.
It has been held that our Compensation Act is to be liberally construed so as to bring as many cases as possible within its coverage. Hannigan v. Goldfarb, 53 N.J. Super. 190 (App. Div. 1958). Referring to the term "employee," the court in Hannigan said:
*128 "The term `employee' in our Workmen's Compensation Act is not limited to narrow common-law concepts for, in addition to servants, it `includes all natural persons * * * who perform service for an employer for financial consideration.' N.J.S.A. 34:15-36. This is a broad definition which includes relationships not ordinarily considered to constitute employment." (at p. 195)
Whether or not Buchner was, in fact, an employee must be determined not under the route lease agreement alone but upon the totality of the facts surrounding the relationship. The language of the agreement would not be conclusive. "[W]e are not so much concerned with the formal wording of the instrument characterizing the status of the parties as we are the factual relation between the parties, the true determinative of their status." El v. Newark Star-Ledger, supra, 131 N.J.L., at p. 379; Hannigan v. Goldfarb, supra, 53 N.J. Super., at p. 196.
It is well settled that one of the criteria for determining the employer-employee relationship is whether the employer retains the right to control the details of the employee's work, i.e., not only the results to be accomplished, but the manner in which the business or work shall be done. De Monaco v. Renton, 18 N.J. 352, 355 (1955); Piantanida v. Bennett, 17 N.J. 291 (1955); Wilson v. Kelleher Motor Freight Lines, Inc., supra. In Mahoney v. Nitroform Co., Inc., 20 N.J. 499 (1956), the court held that the control test is satisfied when the employer has the right to control, and it is not requisite to prove its actual exercise.
Under the control test various factors are considered from which the right of control is usually inferred, namely, direct evidence of the right to control and the exercise of control, right of termination, method of payment and who furnishes the equipment. Proof of a single factor is not necessarily conclusive evidence of control; it is the totality of the facts in a given case which must determine.
Thus, in Brower v. Rossmy, 63 N.J. Super. 395, 407 (App. Div. 1960), certification denied 34 N.J. 65 (1961), it was held the mere fact that the petitioner brought her own equipment *129 and actually controlled this equipment did not ipso facto preclude her from being an employee. So, too, failure to make deductions for withholding taxes and the like is not in any way dispositive. Congleton v. Pura-Tex Stone Corp., 53 N.J. Super. 282, 290 (App. Div. 1958). And, further, in Brower, supra, and El, supra, a written agreement between the parties did not conclude the issue.
Here the Record contends that it did not direct the manner in which petitioner delivered the newspapers; that such evidence establishes conclusively that there was no control, and hence no employer-employee relationship. Such a conclusion does not necessarily follow. "When the manner of performing the service is beyond another's control because of its nature, absence of direct control over such details becomes insignificant in the overall view of the facts." DeMonaco v. Renton, supra, 18 N.J., at p. 357; Hannigan v. Goldfarb, supra, 53 N.J. Super., at p. 196. Lack of direct control of the manner in which petitioner travelled his route or left the papers at the home of a subscriber is absent in the present case because there was no necessity for the same; it was relatively unimportant. Respondent did retain indirect control. It had the power to discharge petitioner without notice. Despite respondent's contention that it did not control the method of delivery to a subscriber, it must be deemed obvious that repeated complaints of non-delivery, or the method of delivery, or the time of delivery, by the subscribers would have resulted in some action by respondent to protect its income from its business.
Respondent fixed the route limits, owned and controlled the subscriber list, delivered only the papers required for the specific number of subscribers on the route, required petitioner to deliver the papers promptly, fixed the wholesale and resale price, barred petitioner from selling or delivering any other newspapers or printed matter on the route, barred petitioner from exhibiting the subscriber list to others, required petitioner to make collections and to account weekly to respondent's representative, and retained the power to discharge petitioner *130 without notice. Petitioner further testified that the district adviser showed him his route and that if a subscriber gave him a "rough time" the district adviser would see the subscriber and "do the talking."
Of significant interest is the case of Nevada Industrial Commission v. Bibb, 374 P.2d 531 (Nev. Sup. Ct. 1962), cited by petitioner, wherein a newsboy in a workmen's compensation case was held to be an employee. The language contained in the agreement in Bibb is identical with that contained in the Record route lease. The facts in Bibb closely parallel those in the instant case. The court there said:
"The contract of January 15, 1959 and the Bibb affidavit delineated the relationship between Bibb and the Newspaper. The Newspaper, among other things, controlled Bibb's hours of work, his place of work, the nature of his work, the amount of work to be done, the right to discharge without liability, the furnishing of supplies (newspapers), the sales price thereof, and the compensation Bibb was to receive.
Under said statutory provisions it is clear to us that respondent Bibb at the time of his injuries was an employee of Reno Newspapers, Inc., and that his injuries arose out of and in the course of his employment." (374 P.2d, at p. 534)
The more recent opinions of our courts, such as Hannigan v. Goldfarb, supra; Marcus v. Eastern Agricultural Ass'n, Inc., 58 N.J. Super. 584, 596 (App. Div. 1959), whose dissent was adopted by the Supreme Court in its reversal, 32 N.J. 460 (1960), and Brower v. Rossmy, supra, place less emphasis on the factor of control by the employer, advance "the relative nature of the work" test, and conclude that the totality of the facts surrounding the relationship between the two parties determines the status of one as an employee, for workmen's compensation purposes. The reason such test is considered a most relevant factor in the determination of the employer-employee relationship is expressed in the dissenting opinion in Marcus v. Eastern Agricultural Ass'n, Inc., supra:
"The purpose of workmen's compensation legislation * * * is that the cost of all industrial accidents should be borne by the consumer *131 as a part of the cost of the product. It follows that any workers whose services form a regular and continuing part of the cost of that product, and whose method of operation is not such an independent business that it forms in itself a separate route through which his own costs of industrial accident can be channeled, is within the area of intended protection. * * * The test * * * must, therefore, be essentially an economic and functional one and the determinative criteria not the inconclusive details of the arrangement between the parties, but rather the extent of the economic dependence of the worker upon the business he serves and the relationship of the nature of his work to the operation of that business." (at p. 603)
The test contains these ingredients: the character of the claimant's work or business  how skilled it is, how much of a separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden,  and its relation to the employer's business, that is, how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job. 1 Larson, supra, § 43.52, at p. 633.
Applying such test to the facts of this case we find that the work of the petitioner was manual labor requiring no great skill, training or experience. The work he performed was intimately bound up with respondent's business  the distribution of its newspapers to people who had made subscriptions directly to the newspaper itself. This is not a case of a news-stand vendor who sells newspapers to the casual passerby, along with magazines, candy, cigarettes and other products, so that we may regard him as a small but independent business man, who buys his newspapers and sells them and obtains his profit without any accounting therefor to his supplier.
Here petitioner was solely dependent upon the Bergen Evening Record and was performing a job for it by delivering its newspapers over a fixed route to its subscribers only. The Record retained a property right in the list of its customers, supplied the boy only the exact number of newspapers for the listed subscribers, set the prices, barred him from selling other *132 products and retained the right to terminate his work at any time.
The work of petitioner was an essential part of the respondent's regular business, the publication, selling and distribution of its newspapers. The work was continuous and certainly it cannot be said that the earnings were such that it could be expected to carry its own accident burden.
Viewing the evidence in its entirety we are satisfied that by application of the "right to control" and the "relative nature of the work" tests, the relationship of employer-employee is clearly established. The County Court's judgment awarding compensation to the petitioner is affirmed.