ROBERT DeMONACO, AN INFANT BY HIS GUARDIAN *AD LITEM*, MARY GIACOBE, PETITIONER-APPELLANT, v. LOUIS RENTON, RESPONDENT-RESPONDENT.

Argued March 28, 1955—Decided May 2, 1955.

354

Mr. *Mortimer Wald* argued the cause for the appellant (*Mr. Rudolph Markowitz*, attorney).

Mr. *George J. Kaplan* argued the cause for the respondent (*Mr. Louis Sleisel*, attorney).

The opinion of the court was delivered by

VANDERBILT, C. J.   This is a workmen's compensation case in which the petitioner was a newsboy on the sidewalks of Jersey City.   The respondent conducted a newsstand in Jersey City where the petitioner would report each evening and receive copies of the early edition of the next morning's *New York Daily News* and *New York Daily Mirror*.   On the evening in question the respondent assigned the petitioner to the front of the State Theater, where the petitioner remained until the last performance had ended and then he proceeded to cross the street in order to sell the remaining

papers on the opposite corner. While crossing the street he was run down by an automobile. This action resulted in a dismissal of the petition by the Workmen's Compensation Division which, although finding that an employer-employee relationship existed, held that the petitioner as a newsboy was specifically barred from recovery under section 36 of the Workmen's Compensation Act, N. J. S. A. 34:15–36. On appeal the County Court affirmed for the same reason, 32 N. J. Super. 450, although also finding no employer-employee relationship, and we certified the appeal on our own motion prior to oral argument in the Appellate Division of the Superior Court.

■ The first question is whether the petitioner was an employee of the respondent at the time of the accident, the basic prerequisite for recovery under the act, N. J. S. A. 34:15–1 et seq. N. J. S. A. 34:15–36 defines "employer" as "synonymous with master, and includes natural persons, partnerships, and corporations," while "employee" is defined as "synonymous with servant, and includes all natural persons who perform service for another for financial consideration, exclusive of casual employments." The determinative factor as to whether a person is an employee or an independent contractor for the purposes of workmen's compensation is control; the relationship of master and servant exists whenever the employer retains the right to determine not only what shall be done, but how it shall be done, Wilson v. Kelleher Motor Freight Lines, Inc., 12 N. J. 261, 264 (1953); Cappadonna v. Passaic Motors, Inc., 136 N. J. L. 299 (Sup. Ct. 1947). affirmed 137 N. J. L. 661 (E. & A. 1948).

■ The respondent's position was that of supervisor for two newspaper companies:

"I am supervisor of all the News, Daily Newses, in this northern New Jersey. In other words, I work under the circulation and promotion.

It is my duty to see that circulation is carried out and papers are distributed."

Although it is not altogether clear, it appears that he was an independent contractor who had a franchise or exclusive

right from the two newspaper companies to distribute their papers in the Jersey City area. In any event, there is no contention that he acted as agent for the newspaper companies in hiring the newsboys. The newsboys, including the petitioner, would report to him and he would give each a specified number of newspapers to sell and would tell each the precise territory where he was to sell them. If the newspapers were to be sold at any distance from the respondent's newsstand his truck would drop the newspapers off and the newsboy would pick them up. The newsboys paid the respondent nothing for the papers and were told by him how much to charge for them. Then after they had completed their sales they returned to his newsstand and gave him all the money they had received, including their tips, and returned unsold papers to him. He would then determine what they were to receive, which was usually a penny for each newspaper sold. There was testimony by one newsboy that on Saturday nights they received "a straight four or five dollars."

It is quite apparent that the nature of the respondent's business was such that he exercised full control over all newsboys, even to the extent of telling them precisely where they were to stand and sell the papers. They paid nothing for the papers and had no choice as to the number they received, the price they were to charge, or where they were to sell them. There was testimony that on occasion the respondent would search their pockets to determine whether they were withholding any money from him. In *El v. Newark Star-Ledger*, 131 *N. J. L.* 373 (*Sup. Ct.* 1944), the court found that an employer-employee relationship existed between the newspaper company and a newsboy who delivered its papers, while in *Crawford v. Newark Star Publishing Co.*, 15 *N. J. Misc.* 77 (*Sup. Ct.* 1936), the newspaper company admitted that a master-servant relationship existed with the petitioner who sold newspaper subscriptions. In *Hearst Publications v. U. S.*, 70 *F. Supp.* 666 (*D. C. Cal.* 1946), affirmed without opinion 168 *F. 2d* 751 (9 *Cir.* 1947), the court held that vendors engaged directly by the publishers to sell newspapers at designated street locations were employees

under the Social Security Act and other federal acts. The language of the court's opinion is particularly applicable here:

"Here, the vendors were subject to the publishers' control in every respect save in the manner in which they personally offered the newspaper for sale to the public and collected the price. As to those features, lack of control is absent because of want of necessity for its presence. The witness, William Parrish, a news vendor, stated that in the sale of newspapers, 'it happens there is only one manner to do it.' When the manner of performing the service is beyond another's control because of its nature, absence of direct control over such details becomes insignificant in the overall view of the facts and circumstances to be taken into account in determining the relationship. *United States v. Vogue, Inc.*, 4 *Cir.*, 145 *F.* 2*d* 609, *supra*.

Here the news vendors were engaged, as a means of livelihood, in regularly performing personal services constituting an integral part of the business operations of the publishers. In the performance of these services, they were subject to the general control of the publishers in every respect save where control was unimportant. In connection with their services they made no investment of capital, had no expenses and assumed no financial business risks incidental to a separate trade, business or profession. They were, therefore, in employment with respect to which the taxes were properly imposed." (70 *F. Supp.* at *pages* 674–675.)

See Annotations, 160 *A. L. R.* 713, 723 and 29 *A. L. R.* 2*d* 751, 770 for cases where commission salesmen generally, including newspaper carriers and vendors, have been held to come within the purview of social security and unemployment compensation enactments, and 1 *Larson's Workmen's Compensation Law*, § 44.33 (*b*) and cases cited therein. The vendors here, including the petitioner, were subject to the respondent's control in every respect except in the manner in which they personally offered the newspapers for sale to the public, and as to that feature there clearly was absent any need for such control. We conclude that an employer-employee relationship existed between the respondent and the petitioner.

█ The respondent claims that the petitioner comes within the exclusionary clause in section 36 of the Workmen's Compensation Act, *N. J. S. A.* 34:15–36:

"A person engaged in the vending, selling or offering for sale or delivering directly to the general public newspapers, magazines or periodicals or acting as sales agent or distributor as an independent

contractor of or for any such newspaper, magazine or periodical shall not be considered an employee within the provisions of this chapter."

The petitioner, however, argues that the words "as an independent contractor of or for any such newspaper, magazine or periodical" are descriptive not only of "sales agent or distributor" but also of "a person engaged in * * * vending" and that since he is not an independent contractor he does not fall within the language of this paragraph. Such an interpretation is contrary to the plain meaning of this provision. The sentence is in the disjunctive and refers both to any person engaged in selling or delivering newspapers to the general public and also to sales agents or distributors acting as independent contractors of or for the newspaper, *Crawford v. Newark Star Publishing Co., supra*, 15 *N. J. Misc.* 77. Clearly, the reference to a person engaged in selling results in the exclusion from the coverage of the Workmen's Compensation Act of those employees who are in any way engaged in the sale of newspapers, magazines or periodicals directly to the public and who but for this provision would come within the coverage of the act. Thus omitted from the coverage of the act are, for instance, clerks in stores who as part of their jobs may at times sell newspapers or magazines to customers, while at the same time other clerks in the same store who do not participate in the sale of newspapers or magazines are covered under the act.

Although the Legislature has broad discretion in selecting those who shall be affected by its enactments, such selection must be reasonable and include all those who naturally fall within the class. The classification must be nondiscriminatory and bear a reasonable relationship to the general object of the legislation:

"The equal protection clause means that the right of all persons must rest upon the same rule under similar circumstances, and that it applies to the exercise of all the powers of the state which can affect the individual or his property, including the power of taxation. *Louisville Gas & Electric Co. v. Coleman* (1928), 277 *U. S.* 32, 48 *S. Ct.* 423, 72 *L. Ed.* 770. While the due process and equal protection guaranties are not coterminous in their spheres of protection,

equality of right is fundamental in both. Each forbids class legislation arbitrarily discriminatory against some and favoring others in like circumstances. It is essential that the classification itself be reasonable and not arbitrary, and be based upon material and substantial distinctions and differences reasonably related to the subject matter of the legislation or considerations of policy, and that there be uniformity within the class. The equal protection of the laws means that no person or class of persons shall be denied the protection of the laws enjoyed by other persons or classes of persons under similar conditions and circumstances, in their lives, liberty, and property, and in the pursuit of happiness, both as respects privileges conferred and burdens imposed." *Washington National Insurance Co. v. Board of Review*, 1 *N. J.* 545, 553 (1949).

We perceive no reasonable basis for the exclusion from the coverage of the Workmen's Compensation Act of employees who ordinarily would fall within the coverage of the act, merely because at some time during their employment they are engaged in selling newspapers or magazines to the general public. In *Washington National Insurance Co. v. Board of Review, supra,* 1 *N. J.* 545, we were confronted with the question of the constitutionality of a statutory provision which excluded from the coverage of the Unemployment Compensation Act certain insurance agents while including others. We declared the provision unconstitutional as a violation of the due process and equal protection clauses of the New Jersey and Federal constitutions:

"The classification is plainly illusory. The class included comprises not industrial insurance agents generally, but industrial life insurance agents only; and we perceive no valid ground for this distinction. There is no rational basis for the exclusion of industrial health and accident insurance agents from the excepted class and thus from the coverage of the Act thereby extended to industrial life insurance agents. The character of the service and the conditions of work and the mode and manner of performance and compensation are essentially the same for both groups. The one form of application is used for both classes of insurance; and the proofs show that the industrial insurance agents employed by the appellant company serve in both fields. We have no means of knowing why the Legislature made this distinction. There is no apparent reason for it. There is no conceivable difference between those included and those excluded sufficient to warrant this differentiation of treatment in respect of the benefits and burdens of the Unemployment Compensation Law." (at 554)

The object of the Workmen's Compensation Act is to provide security for all employees who are injured in the course of their employment. If the Legislature wishes to exclude a certain class from the coverage of the act it may, of course, do so, but only where the classification bears a reasonable and just relationship to the general object of the legislation or to some substantial consideration of public policy or convenience or the service of the general welfare. For instance, the Legislature may exclude certain occupations on the basis of the degree of risk involved or on the existence of other laws governing liability, *Middleton v. Texas Power and Light Co.*, 249 *U. S.* 152, 159, 39 *S. Ct.* 227, 63 *L. Ed.* 527, 532 (1919); *Ward & Gow v. Krinsky*, 259 *U. S.* 503, 517, 42 *S. Ct.* 529, 66 *L. Ed.* 1033 (1922), or on the fact that merely casual employment is involved, *N. J. S. A.* 34:15–36. Here, however, we perceive no reason, nor has any been suggested to us, why employees who may either primarily or incidentally be engaged in the sale of newspapers or magazines to the general public should be excluded from the coverage of the act. The product which they are handling, newspapers and magazines, affords no logical reason for their separate classification. We therefore conclude that the classification of such persons is clearly unreal and arbitrary and that the third paragraph of *N. J. S. A.* 34:15–36 is unconstitutional. However, this section of the statute is severable, representing merely an invalid attempt by the Legislature to exclude a particular group from coverage of the Workmen's Compensation Act. Its unconstitutionality does not affect the remaining parts of the Act, *New Jersey Turnpike Authority v. Parsons*, 3 *N. J.* 235, 248 (1949).

The judgment below is reversed and the case will be remanded to the Workmen's Compensation Division for further proceedings in accordance with this opinion.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, JACOBS and BRENNAN—4.

*For affirmance*—Justices OLIPHANT, WACHENFELD and BURLING—3.