Ralph KERN, et al., Respondents,

v.

STEELE COUNTY, Steele County Department of Social Services, Respondents,

and

Western Casualty and Surety Company, Appellant,

Christine Ann Born, et al., Respondents.

No. 81–1021.

Supreme Court of Minnesota.

July 23, 1982.

Farrish, Johnson, Maschka & Hottinger and John M. Sheran, Mankato, for appellant.

Muir & Heuel, Ross Muir and George E. Meinz, Rochester, for Kern, et al.

Douglas Ruth, County Atty., Owatonna, for Steele County.

Robert Schmidt, Waseca, for Born, et al.

OTIS, Justice.

Respondents Ralph and Shirley Kern and their farm liability insurer, Minnesota Mutual Fire and Casualty (Minnesota Mutual), brought a declaratory judgment action seeking a determination that the Kerns, as foster parents, were employees of Steele County, thus obligating Steele County's liability insurer, Western Casualty and Surety Company (Western), to defend and indemnify the Kerns in an action arising out of an injury to a foster child while placed in the Kerns' farm home. Western appeals from the district court's order of summary judgment which held, in relevant part, that the Kerns were employees of Steele County while acting as foster parents. We reverse.

Ralph and Shirley Kern were foster parents participating in the foster home child care program administered by the Steele County Department of Social Services.[1]

The Kerns were issued a license by the State Department of Public Welfare permitting them to provide foster care in their farm home for as many as four children. While acting as foster parents the Kerns received a fixed monthly stipend from the Steele County Department of Social Services to cover the expenses of foster children, such as food and clothing. The Kerns' farm home was also monitored on an approximately monthly basis by a Steele County social worker who had authority to remove a foster child at will.

In May 1975, Christine Born, a minor child, was placed with the Kerns' as a foster child. In August 1975, Christine Born was injured when she consumed some varnish remover in the Kerns' farm home. Christine's natural mother, Corrine Reynolds, brought suit against the Kerns. The Kerns and their farm liability insurer, Minnesota Mutual, tendered defense of the suit to Steele County and its insurer, Western. The tender was refused.

After the refusal of tender, the Kerns and Minnesota Mutual brought this declaratory judgment action seeking a determination that the Kerns, in their capacity as foster parents, were employees of Steele County within the meaning of a liability policy issued by Western covering Steele County and "any employee." [2]

The district court determined that the Kerns were employees of Steele County while acting in their capacity as foster parents. We disagree.[3]

We are, of course, guided by principles of agency law in resolving whether the Kerns,

---

1. While the foster care program is administered on the local level by the various county welfare boards, the program nevertheless operates at all times under the supervision of and in accordance with the rules and regulations of the state commissioner of public welfare. *See* Minn.Stat. § 393.07, subd. 1 (1980).

2. Western's liability policy with Steele County provides in relevant part:

    It is agreed that the "Persons Insured" provision is amended to include any employee of the named insured while acting within the scope of his duties as such * * *

    (a) It is further agreed and understood that all coverages provided by the policy and its endorsements will apply to any employee of the named insured.

3. This case would have never arisen if Christine Born had been injured after the effective date of Minn.Stat. § 245.814 (1980). That statute provides:

    The commissioner of public welfare shall within the appropriation provided purchase and provide insurance to foster parents to cover their liability for:

    (1) injuries or property damage caused or sustained by foster children in their home.

as foster parents, were employees of Steele County. In *Iverson v. Independent School District No. 547*, 257 N.W.2d 572 (Minn. 1977), we reiterated the five factors we consider in determining the existence of an employment relationship:

> (1) The right of the employer to control the manner and means of performance of the work;
>
> (2) The mode of payment;
>
> (3) Furnishing of material or tools;
>
> (4) Control of the premises where the work is to be performed; and
>
> (5) Right of discharge.

*Id.* at 573. *Accord, Wangen v. City of Fountain*, 255 N.W.2d 813, 815 (Minn.1977); *Guhlke v. Roberts Truck Lines*, 268 Minn. 141, 143, 128 N.W.2d 324, 326 (1964).

In this case, we think a consideration of these five factors does not provide a basis for finding an employment relationship. First, monthly visits to the Kerns' farm home by a county social worker do not indicate a right to control the manner in which the work was performed. Under similar facts in *Huber v. Hennepin County Welfare Board*, 249 Minn. 561, 83 N.W.2d 511 (1957), we stated that periodic investigations "[do] not show such control as ordinarily would establish a relationship of master and servant." *Id.* at 567, 83 N.W.2d at 515. *See also Speaks, Inc. v. Jensen*, 309 Minn. 48, 243 N.W.2d 142 (1976). Second, payment of a fixed monthly stipend rather than hourly compensation is more indicative of an independent contract relationship than an employment relationship. *See Wangen v. City of Fountain*, 255 N.W.2d 813, 815 (Minn.1977). Third, the Kerns provided their own premises as room and board for Christine Born. Fourth, periodic visits to the Kerns' farm home does not suggest that Steele County had control of the premises. Fifth, while the right to remove Christine Born from the Kerns' farm home at will perhaps suggests a *de facto* right of discharge, this consideration alone is not conclusive, *see Geerdes v. J. R. Watkins Co.*, 258 Minn. 254, 262, 103 N.W.2d 641, 646 (1960) (citation omitted), and alone cannot overcome the weight of the four prior factors.

We hold, therefore, that the Kerns, in their capacity as foster parents, were not employees of Steele County.

Reversed.

WAHL, Justice (dissenting).

I respectfully dissent. I would affirm the determination of the trial court that the Kerns are employees of Steele County within the meaning of the county's liability insurance policy. Not only have they met the most important tests of an employer-employee relationship, *Iverson v. Independent School District No. 547*, 257 N.W.2d 572 (Minn.1977), strong public policy considerations demand such a conclusion.

The most important of the five factors in *Iverson* is the employer's right to control the means and manner of an employee's performance, *Holzemer v. Minnesota Milk Co.*, 259 N.W.2d 592 (Minn.1977). As the trial court noted, in the memorandum accompanying its order, Steele County social workers

> were extensively involved in accumulating information for licensing of foster homes, monitoring the appropriateness of food and clothing * * *, providing permission for foster parents to take extended trips, monitoring medical assistance to foster children * * *, general approval of foster home activities and procedures * *, and authority to remove foster children from the home at will.

Such close monitoring indicates that the foster-care parent is in a very different situation from that of the independent contractor who, we have noted, "is subject to his employer's control only as to the end product or final result of his work." *Hammes v. Suk*, 291 Minn. 233, 235, 190 N.W.2d 478, 481 (1971).

An employer need not be continually present or wholly in control of an employee's activities for the court to conclude that his "right of control" is enough to justify a finding of an employer-employee relationship. In *Ossenfort v. Associated Milk Producers, Inc.*, 254 N.W.2d 672 (Minn.1977),

we found the relationship between a dairy association and a milk hauler to be that of employer and employee despite the fact that the contract between them described the hauler as an independent contractor and provided that the association had "no control over the time, manner, means or method of [the hauler's] performance with respect to routes and schedules." *Id.* at 677. The determinative factor in the jury's conclusion, upheld by this court on review, was that the association's fieldmen could ride on the haulers' trucks to be sure that they "pulled into the farms safely, picked up the milk sample correctly, kept the samples cool, and kept themselves and the equipment clean." *Id.* at 678. The parallels between the monitoring of milk haulers in *Ossenfort* and the supervision of foster homes in the case at bar leads to the conclusion that the relationship between Steele County and the Kerns is that of employer and employee.

*Huber v. Hennepin County Welfare Board*, 249 Minn. 561, 83 N.W.2d 511 (1957), is not dispositive of this issue, since Huber's status was very different from that of the Kerns. Huber was a nurse who was paid by Hennepin County for services to a recipient of old-age assistance. Her services were more limited in scope than those of a foster parent; she was paid on either a monthly or per diem basis; and she was required to follow the instructions of the attending physician, not those of the county.

The Kerns' voluntary status precludes a finding that the county's mode of payment makes them independent contractors.[1] The majority notes that the Kerns receive a monthly stipend from the county and concludes that this "mode of payment" indicates that they are independent contractors rather than employees. In so concluding, the majority ignores the fact that the purpose of the stipend is not to pay foster parents for their services but to provide foster children with necessities. Most parents would agree that they could not be paid enough for their services in parenting

their children. Like other parents, foster parents render their parenting services voluntarily.

The guidelines listed in *Iverson* are factors to be considered in evaluating a particular relationship. They may not all be present in any one relationship, and I agree with the majority that all five factors are not present here. However, the degree of the county's control over a foster parent's activities, the voluntary status of the foster parents, and what the majority calls the county's "*de facto* right of discharge" are sufficient to establish a foster parent's status as an employee for purposes of coverage under the county's liability insurance policy.

To hold that foster parents are not county employees for purposes of a county liability policy covering the county and "any employee" will undermine the goals of our foster-care program. The county, state and in some cases federal governments are responsible for providing for children in foster care. *See* Minn.Stat. §§ 260.242, 261.27 (1980). These children need homes. A family is acting on behalf of society at large when it takes on this responsibility. It is in the interests of the people of this state, and especially of the children themselves, to encourage participation of foster parents in the foster-care program. If foster parents are excluded from a county's liability policy, individuals may be reluctant to volunteer their services.

I would hold that, for the purposes of liability coverage, the Kerns are employees of Steele County and that Minnesota Mutual Fire and Casualty and Western Casualty and Surety Company should share liability in proportion to the limits of their respective policies.

TODD, Justice (dissenting).

I join in the dissent of Justice WAHL.

YETKA, Justice (dissenting).

I join in the dissent of Justice WAHL.

---

1. Voluntary workers may be employees. *See, e.g.*, Minn.Stat. § 176.011, subd. 9 (1980).