195 N.J. Super. 4 (1984)
477 A.2d 826
NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION AND LONG ISLAND INSURANCE COMPANY IN LIQUIDATION, PLAINTIFFS-RESPONDENTS,
v.
STATE OF NEW JERSEY, DEFENDANT-APPELLANT, AND
ELWOOD BELL AND LILLIAN BELL, NATHANIEL MURRAY AND CHARLOTTE MURRAY, GUARDIANS AD LITEM OF NATHANIEL RODGER MURRAY, AN INFANT, DEFENDANTS-RESPONDENTS, AND NATHANIEL MURRAY AND CHARLOTTE MURRAY, GUARDIANS AD LITEM OF NATHANIEL RODGER MURRAY, AN INFANT, PLAINTIFFS,
v.
STATE OF NEW JERSEY, ELWOOD BELL AND LILLIAN BELL, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 1983.
Decided June 22, 1984.
*6 Before Judges MICHELS, KING and DREIER.
Jerry Fischer, Deputy Attorney General, argued the cause for appellant State of New Jersey (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Jerry Fischer, on the brief).
R. Alan Aslaksen argued the cause for respondents New Jersey Property-Liability Insurance Guaranty Association and Long Island Insurance Company in liquidation.
Angelo J. DiCamillo argued the cause for respondents Elwood Bell and Lillian Bell (Riley & DiCamillo, attorneys; Angelo J. DiCamillo, on the brief).
Seth Grossman argued the cause for respondents Nathaniel Murray and Charlotte Murray, guardians ad litem of Nathaniel Rodger Murray, an infant.
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant State of New Jersey appeals from a judgment of the Chancery Division declaring that defendants Elwood Bell *7 and Lillian Bell (Bells), as foster parents, were State employees for purposes of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., and therefore entitled to indemnification for damages, counsel fees and costs incurred as the result of an action brought against them by plaintiffs Nathaniel Murray and Charlotte Murray (Murrays), the natural parents of Nathaniel Rodger Murray, a child who was injured while in their care.
The background of this case is adequately set forth in the opinion of the trial court in N.J. Property Liab., etc. v. State, 184 N.J. Super. 348 (Ch.Div. 1982), and need only be summarized here. The Bells were approved foster parents for the State of New Jersey. In 1978, two apparently abandoned juveniles, Nathaniel Rodger Murray and his sibling, were found and turned over to the Division of Youth and Family Services (DYFS). DYFS placed the children with the Bells on a temporary basis while the natural parents were sought. During this time, Nathaniel was accidently injured. When his parents were located and Nathaniel returned to them, they instituted a negligence suit in the Law Division against both the State and the Bells. The State refused to defend or indemnify the Bells, and their insurance carrier, plaintiffs New Jersey Property-Liability Insurance Guaranty Association and the Long Island Insurance Company in liquidation, then instituted suit in the Chancery Division against the State, the Bells and the Murrays, seeking a declaration that the State was obligated to defend and indemnify the Bells. The two actions were consolidated and the Chancery Division entered judgment declaring that the Bells were State employees and thus entitled to defense and indemnification.[1] This appeal followed.
*8 The New Jersey Tort Claims Act requires the Attorney General to defend any State employee who is sued on account of an act or omission occurring in the scope of his employment. N.J.S.A. 59:10A-1. Indemnification for the State employee is authorized both when the Attorney General provides for the employee's defense, N.J.S.A. 59:10-1, and when the Attorney General refuses to provide for the employee's defense. N.J.S.A. 59:10-2. "Employee" is defined to include:
... an officer, employee or servant, whether or not compensated or part-time, who is authorized to perform any act or service; provided, however, that the term does not include an independent contractor. [N.J.S.A. 59:1-3]
The few reported decisions involving "employee" as it is used in N.J.S.A. 59:1-3 shed little light on how the word should be construed. See Woodsum v. Pemberton Tp., 172 N.J. Super. 489, 521 (Law Div. 1980), aff'd 177 N.J. Super. 639 (App.Div. 1981); Malloy v. State, 148 N.J. Super. 15, 24 (App.Div. 1977), rev'd 76 N.J. 515 (1978); Girard v. Alverez, 144 N.J. Super. 259, 262 (App.Div. 1976). See also Vacirca v. Consolidated Rail Corp., 192 N.J. Super. 412, 417 (Law Div. 1983); Martin v. Tp. of Rochelle Park, 144 N.J. Super. 216, 221 (App.Div. 1976). Guidance must therefore be sought from common-law principles.
It has long been recognized that control by the master over the servant is the essence of the master-servant relationship on which the doctrine of respondeat superior is based. See, e.g., Cuff v. Newark & New York R. Co., 35 N.J.L. 17, 23 (Sup.Ct. 1870), aff'd o.b., 35 N.J.L. 574 (E. & A. 1871); Courtinard v. Gray Burial Co., 98 N.J.L. 493, 495 (E. & A. 1922). Under the control test, "[t]he relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or in other words, not only what shall be done, but how it shall be done." Errickson v. Schwiers Co., 108 N.J.L. 481, 483 (E. & A. 1931). In contrast to a servant, an independent contractor is defined as "one who, carrying on an independent business, contracts to do a piece of work according *9 to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work." Errickson, supra; accord, Wilson v. Kelleher Motor Freight Lines, Inc., 12 N.J. 261, 264 (1953).
Following enactment in this State of workers' compensation legislation, our courts applied the control test  used to identify the master-servant relationship  in order to determine whether a claimant is an "employee" as it was defined in the Workers' Compensation Act, N.J.S.A. 34:15-36, L. 1911, c. 95, § 23, as amended.[2]See, e.g., DeMonaco v. Renton, 18 N.J. 352, 355 (1955); Piantanida v. Bennett, 17 N.J. 291, 294-295 (1955); Wilson, supra; Errickson, supra; Essbee Amusement Corp. v. Greenhaus, 114 N.J.L. 492, 493 (Sup.Ct. 1935).
However, use of the control test to determine whether one is an employee for purposes of social legislation such as the Workers' Compensation Act is inapposite because "[the basic purpose for which the definition is used in compensation law is entirely different from the common-law purpose]." Larson, Workmen's Compensation Law, § 43.42 at 8-16 (1982) (emphasis in original). Although it is logical to condition the master's liability to a third party for the torts of a servant on the control over the servant which the master has the right to exercise, absence of control is not necessarily significant where the employee himself seeks compensation for work-related injuries. See Larson, Workmen's Compensation Law, supra; Brower v. Rossmy, 63 N.J. Super. 395, 404 (App.Div. 1960), *10 certif. den. 34 N.J. 65 (1961); Marcus v. Eastern Agricultural Ass'n, Inc., 58 N.J. Super. 584, 602 (App.Div. 1959) (Conford, J.A.D., dissenting), rev'd on dissent, 32 N.J. 460 (1960). As Judge Conford observed in his dissent in Marcus:
... there are various situations in which the control test does not emerge as the dispositive factor. For example, where it is not in the nature of the work for the manner of its performance to be within the hiring party's direct control, the factor of control can obviously not be the critical one in the resolution of the case, but takes its place as only one of the various potential indicia of the relationship which must be balanced and weighed in determining what, under the totality of the circumstances, the character of that relationship really is. [58 N.J. Super. at 597]
Accord, DeMonaco, supra, 18 N.J. at 357; Hannigan v. Goldfarb, 53 N.J. Super. 190, 196-197 (App.Div. 1958).
Reversing the judgment of the Appellate Division on the basis of Judge Conford's dissent, the Supreme Court adopted a new test of the employer-employee relationship:
... the test in the type of case before us here must, therefore, be essentially an economic and functional one, and the determinative criteria not the inconclusive details of the arrangement between the parties, but rather the extent of the economic dependence of the worker upon the business he serves and the relationship of the nature of his work to the operation of that business. [58 N.J. Super. at 603]
It has been repeatedly recognized, both implicitly and explicitly, that the "relative nature of the work" test was adopted in Marcus for purposes of defining the employer-employee relationship in workers' compensation cases. See, e.g., Caicco v. Toto Brothers, Inc., 62 N.J. 305, 309 (1973); Kalnas v. Layne of New York Co., 173 N.J. Super. 492, 497 (App.Div. 1980); Smith v. E.T.L. Enterprises, 155 N.J. Super. 343, 351 (App.Div. 1978); Rossnagle v. Capra and Shell Oil Co., 127 N.J. Super. 507, 517 (App.Div. 1973), aff'd o.b. 64 N.J. 549 (1974); Tofani v. LoBiondo Brothers Motor Express, Inc., 83 N.J. Super. 480, 486 (App.Div. 1964), aff'd o.b. 43 N.J. 494 (1964); Buchner v. Bergen Evening Record, 81 N.J. Super. 121, 130 (App.Div. 1963); Brower, supra, 63 N.J. Super. at 404. The rationale behind allowing a broader test of "employee" in the context of workers' compensation cases is grounded in the fact that, as social legislation, the New Jersey Workers' Compensation *11 Act is to be liberally construed in order that its beneficent purposes may be accomplished. Howard v. Harwood's Restaurant Co., 25 N.J. 72, 88 (1957); Gargiulo v. Gargiulo, 13 N.J. 8, 13 (1953). For example, in Hannigan, supra, we stated:
The term "employee" in our Workmen's Compensation Act is not limited to narrow common-law concepts for, in addition to servants, it "includes all natural persons * * * who perform service for an employer for financial consideration." N.J.S.A. 34:15-36. This is a broad definition which includes relationships not ordinarily considered to constitute employment. Our act is construed to bring as many cases as possible within its coverage.... [53 N.J. Super. at 195; citations omitted]
It is clear from the above analysis that the trial court here mistakenly applied the relative nature of the work test to a situation not involving a workers' compensation action. The analysis should have been based on the control test alone. Although we recognize that there may be non-compensation cases involving social legislation where public policy considerations require that the control test be supplemented by the relative nature of the work standard, see, e.g., Pelliccioni v. Schuyler Packing Co., 140 N.J. Super. 190, 199 (App.Div. 1976) (employee of trucking company which was wholly owned subsidiary of railroad brought action against railroad under Federal Employers' Liability Act, 45 U.S.C.A. §§ 51 to 60), the instant appeal does not present such a case. The fact that the legislation underlying DYFS is to be liberally construed, N.J.S.A. 30:4C-10, does not require us to apply the relative nature of the work standard to determine whether foster parents are employees for purposes of the Tort Claims Act. That act was designed to limit, not broaden, governmental liability, and we construe it accordingly. N.J.S.A. 59:1-2; Woodsum, supra, 172 N.J. Super. at 517; Burg v. State, 147 N.J. Super. 316, 320 (App.Div. 1977), certif. den. 75 N.J. 11 (1977). We therefore hold to the view that the proper standard to determine whether the Bells, as foster parents, are employees of the state as defined in N.J.S.A. 59:1-3 is a test of control.
We now turn to the facts of the instant case as they bear upon the question of control. DYFS is directed to provide care *12 and custody for children "in such manner that the children may, so far as practicable, continue to live in their own homes and family life be thereby preserved and strengthened..." N.J.S.A. 30:4C-3(a). It is statutorily empowered to place a child in a foster home whenever it appears that his needs cannot be adequately met in his own home. N.J.S.A. 30:4C-26(a). "Foster care is designed as a temporary palliative to care for children whose parents are unable to do so for one or more reasons...." W.C. v. P.M., 155 N.J. Super. 555, 565 (App.Div. 1978), certif. den. 75 N.J. 606 (1978). DYFS is authorized to make necessary payments for maintenance of any child in its care, including board, lodging, clothing, medical, dental and hospital expenses. N.J.S.A. 30:4C-27. In its administrative capacity, DYFS has discretionary authority to remove children from the foster home and reunite them with their natural family whenever it is deemed appropriate. W.C. v. P.M., supra, 155 N.J. Super. at 562-563.
A foster parent is defined as:
any person other than a natural or adoptive parent with whom a child in the care, custody or guardianship of [DYFS] is placed by said division, or with its approval, for temporary or long term care, but shall not include any persons with whom a child is placed for the purpose of adoption. [N.J.S.A. 30:4C-2(h); see 30:4C-26.4; 30:4C-26.6; 30:4C-27.1]
The responsibilities of the foster parent include:
accepting the child as a temporary member of his family and involving the child in family activities; assisting the child in adjusting to the foster home and in forming positive relationships with the foster parent's own children and with other foster children in the home; providing the child with adequate shelter, a well-balanced diet, and appropriate clothing, providing the child with a homelife that will meet his emotional needs for acceptance, guidance, stability, and security; enabling the child's cultural heritage and religious beliefs to be practiced; respecting the child's need for privacy and independence; assisting the child in adjusting to his school and encouraging his participation in school and community activities; and encouraging and promoting the child's relationship with his own family, if appropriate to the case plan. [Policy and Procedures Manual, § 902]
Pursuant to N.J.S.A. 30:4C-27, DYFS is authorized to provide maintenance payments to foster parents for the benefit of children under its jurisdiction. See also N.J.A.C. 10:122A-1.5. *13 That same statute provides "[w]henever a child under care, custody or guardianship is in need of operation, anaesthesia, diagnostic tests or treatment, [DYFS] may give its consent thereto." N.J.S.A. 30:4C-27. In the written agreement entered into between DYFS and the Bells, as foster parents, the Bells agree to "consult" with an agency social worker "before making important decisions." They will "secure consent" from DYFS before taking the child outside the city or county for extended visits or vacations. The foster parents agree not to make independent plans concerning the child either with his parents or others, and to notify DYFS immediately if the child develops abnormal behavior or illness. In addition to paying for the foster child's board, clothing and medical expenses, DYFS agrees to visit the child and foster home "regularly" and "be available to give any service needed for the child's welfare." DYFS will also assist the foster parents in "carrying out [their] responsibility toward the child by giving [them] information regarding the child's needs through suggestions and consultation regarding care of the child."
We find that these circumstances do not denote a degree of control by DYFS over foster parents sufficient to confer employee status on the Bells under the New Jersey Tort Claims Act. While DYFS has authority to direct the result to be accomplished  providing foster children with a normal, wholesome home life  it does not retain control over the means by which this was to be done. In filling parental roles, the Bells enjoyed considerable autonomy regarding the details of day-to-day supervision of foster children in their home. By the terms of their agreement with DYFS, the Bells were to be assisted in carrying out their responsibility to foster children, and were required merely to consult DYFS before making important decisions. The words "assist" and "consult" clearly reflect the diminished control DYFS exercised over the Bells regarding the means (as compared with the ends) of foster care. Cf. Marion v. Public Service Elec. & Gas Co., 72 N.J. Super. 146, 154-155 (App.Div. 1962) (the word "guided" connotes something different *14 than "directed" and should not be interpreted as signifying a right of control). The agreement thus casts the Bells in a unique role more akin to that of independent contractors than servants. Although the Bells must obtain consent from DYFS for medical treatments to a child under their care and removal of the child outside the county for extended visits or vacations, such situations do not ordinarily arise in the course of day-to-day routine and are peripheral to the question of how the Bells satisfy the needs of the foster child. Expressed differently, the consent requirements here vest DYFS with only negligible control over the way the Bells structure and carry out the work or caring for the foster child.
Other indicia of control tend to support this conclusion as well. Among the factors our courts have considered to infer an employer's right of control over an employee (aside from direct evidence of control and exercise of control) are the method of payment; who furnishes the equipment, and right of termination. Tofani, supra, 83 N.J. Super. at 486. Cf. 1 Restatement Agency 2d, § 220 at 485-486 (1958). Since foster parents receive no compensation other than renumeration for expenses incurred in the course of foster care, the "method of payment" criterion mitigates against a finding that the Bells are employees.[3] Similarly, DYFS does not furnish "equipment" to foster parents; it merely provides maintenance payments for clothing, board, lodging, etc. The true "equipment" of foster care is the home and houseware, tableware, bedding and utilities furnished by the foster parents themselves. Cf. Tofani, supra, 83 N.J. Super. at 486. The discretionary authority vested in DYFS to remove children from the foster home when it deems such action appropriate does not indicate a right of *15 control sufficient to transform the Bells into employees where the majority of factors point to the contrary conclusion.
Looking to the decisions of other jurisdictions, we find only one case adequately addressing the issue presented here. See generally Annotation, "Negligence in placement of children," 90 A.L.R.3d 1214 (1979). In Kern v. Steele County, 322 N.W.2d 187 (Minn.Sup.Ct. 1982), a foster child was injured while in the Kern's care, and her mother brought suit against them. The Kerns unsuccessfully tendered defense of the suit to Steele County and its insurer. The Kerns then brought a declaratory judgment action seeking a determination that they were employees of Steele County within the meaning of an insurance policy covering Steele County and "any employee." The trial court so found, and the liability insurer of Steele County appealed. The Minnesota Supreme Court considered five factors in determining the existence of an employment relationship: "(1) The right of the employer to control the manner and means of performance of the work; (2) The mode of payment; (3) Furnishing of materials or tools; (4) Control of the premises where the work is to be performed; and (5) Right of discharge." Kern, supra, 322 N.W.2d at 189. There, as here, each of these considerations except the right of discharge indicated that an employment relationship did not exist, and the Court concluded that the right of discharge alone cannot overcome the weight of the other factors. The Court therefore held that "the Kerns, in their capacity as foster parents, were not employees of Steele County." Ibid. In other cases where a state or county (or an agency thereof) is held vicariously liable for the torts of foster parents, that holding has been based upon a non-delegable duty of care to the child. See, e.g., Bartels v. County of Westchester, 76 A.D.2d 517, 429 N.Y.S. 906 (N.Y. App. Div. 1980); Vonner v. State Department of Public Welfare, 273 So.2d 252 (La.Sup.Ct. 1973). In fact, we note that the Vonner court expressly refrained from reaching a determination of whether foster parents were servants of the Department of Public Welfare. Vonner, supra, 273 So.2d at *16 256, n. 3. Although in at least one case, Pickett v. Washington Cty., 31 Or. App. 1263, 572 P.2d 1070 (Or. App. 1977), the court appears to assume the employee status of foster parents, we are convinced that such a finding would be ill-founded in the present case.
Moreover, we cannot conceive that our Legislature intended that foster parents be State employees within the purview of the New Jersey Tort Claims Act. A legal theory conferring employee status on foster parents would not only render the State liable for injuries suffered by foster children while in the care of foster parents, but also would expose the State to liability for injuries suffered by third parties as a result of the foster parents' torts. To adopt such a theory would place an intolerable burden upon the State and might well diminish the beneficial effects of the foster parent program and compel a return to institutional care as the sole means of addressing the plight of abused and neglected children.
We therefore hold that the Bells, as foster parents, are not employees of the State for purposes of the New Jersey Tort Claims Act, and thus are not entitled to indemnification under that act. Accordingly, the judgment is reversed and the matter is remanded to the trial court for further proceedings.
NOTES
[1] Subsequent to this judgment, the Law Division entered an order approving settlement of the case in chief in favor of the Murrays. However, the order provided, in part, that: "Should the State of New Jersey succeed in reversing or vacating said summary judgment ..., then this consent judgment shall become null and void, and the controversy shall be returned to this court for trial, or otherwise abide the direction of the appropriate appellate court."
[2] Although "servant" originally was defined in cases involving the common-law liability of the master to third parties based on the doctrine of respondeat superior, see 1 Restatement Agency 2d, § 220 comment g at 488 (1958), it is treated as synonymous with "employee" under the Workers' Compensation Act. N.J.S.A. 34:15-36. We see little difference in meaning between the two words for present purposes, and continue to use them interchangably. See Vreeland v. Wilkinson, Gaddis & Co., 129 N.J.L. 283, 284 (Sup.Ct. 1942) (court discusses whether negligent party "was an agent, servant or employee" of defendant-storeowner for purposes of third party liability).
[3] We recognize that an employee does not necessarily have to be compensated for purposes of N.J.S.A. 59:1-3. Nonetheless, the absence of compensation is a significant, although not dispositive, factor in determining whether the Bells qualify as servants under common law.