689 A.2d 143

SAMUEL WAJNER, AS ADMINISTRATOR OF THE ESTATE OF GIERSZ WAJNER, PLAINTIFF–APPELLANT, v. NEWARK BETH ISRAEL MEDICAL CENTER, DARRYL HUNTER AND GENEVA BEATTY, DEFENDANTS, AND DR. VERGILIO, DR. K.C. MODI AND DR. AVA PANNULLO, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 6, 1997—Decided January 29, 1997.

Before Judges HAVEY, BROCHIN and KESTIN.

*Robert R. Cary* argued the cause for appellant (*Bross, Strickland, Cary, Shapiro, Grossman and Icaza, P.A.,* attorneys; *Mr. Cary,* on the brief).

*JoAnn Pietro* argued the cause for respondents Cory Vergilio, M.D. and Kaushik C. Modi, M.D. (*Ruprecht & Hart,* attorneys; *Ms. Pietro,* of counsel; *Adele C. Baker,* on the brief).

*Joseph P. Scardaville* argued the cause for respondent Ava Pannullo, M.D. (*Reiseman & Sharp,* attorneys; *Mr. Scardaville,* of counsel and on the brief).

The opinion of the court was delivered by

HAVEY, P.J.A.D.

This is a medical malpractice action instituted by plaintiff against defendant Drs. Ava Pannullo, Cory Vergilio and Kaushik C. Modi. Defendants were house-staff residents who attended Darryl Butler, a patient at the Beth Israel Medical Center. During decedent's hospitalization, Butler assaulted plaintiff's decedent, with whom he shared a room.[1] In his complaint, plaintiff alleges that defendants were negligent in their supervision of Butler and in their failure to exercise reasonable care in protecting decedent from the assault.

In granting summary judgment, Judge Stein concluded that, as a matter of law, defendants were employees of the University of Medicine and Dentistry of New Jersey (UMDNJ). As such, they were "public employees" entitled to the benefits of the immunity provisions under the Tort Claims Act (TCA), *N.J.S.A.* 59:1–1 to 12–3. *See Fuchilla v. Layman,* 109 *N.J.* 319, 330–31, 537 *A.*2d 652, *cert. denied,* 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L.Ed.*2d 51 (1988); *see also N.J.S.A.* 59:3–1 (a public employee is not liable for an injury where a public entity is immune from liability for that

---

[1] Decedent's subsequent death was unrelated to the injuries he suffered as a result of the assault.

injury). The judge determined that specific provisions of the TCA applied, and thus dismissed plaintiff's complaint.

We affirm substantially for the reasons expressed by Judge Stein in his comprehensive oral opinion rendered on January 23, 1996. We add only the following.

■ Whether a strict "control" test is applied, *see New Jersey Property–Liability Ins. Guar. Ass'n v. State*, 195 *N.J.Super.* 4, 9–13, 477 *A.*2d 826 (App.Div.), *certif. denied*, 99 *N.J.* 188, 491 *A.*2d 691 (1984), or the "relative nature of the work" test, *see Delbridge v. Office of the Public Defender*, 238 *N.J.Super.* 288, 321–22, 569 *A.*2d 854 (Law Div.1989), we are in accord with Judge Stein's determination that defendants were employees of UMDNJ and thus public employees as defined by *N.J.S.A.* 59:1–3. Defendants were subject to a written employment contract with UMDNJ. The agreement defined with specificity the terms and conditions of the residency program, regardless of the hospital to which the resident was assigned. The agreement includes details such as the starting date and duration of the residency, salary and job level, vacation benefits and the provisions by UMDNJ of liability insurance coverage on defendants' behalf. Beth Israel, to which defendants were assigned, is not a party to that agreement.

In addition, UMDNJ had entered into an Affiliation Agreement with Beth Israel under which several members of Beth Israel's staff received clinical appointments to the UMDNJ faculty. These members of UMDNJ's teaching staff assumed the responsibility for the day-to-day activities of the integrated residency program. Under the Agreement: (1) UMDNJ preserved the right to control the manner and means of defendants' performance as residents; (2) defendants' source of payment was from UMDNJ; (3) UMDNJ retained full power to discipline or discharge the residents; and (4) defendants were members of a union that collectively bargained with UMDNJ on the union members' behalf. *See In re University of Med. and Dentistry*, 144 *N.J.* 511, 516, 677 *A.*2d 721 (1996). In short, the judge's application of the "control"

test in concluding that defendants were UMDNJ employees is legally sound and supported by the undisputed facts.

■ We add parenthetically that defendants must be deemed "employees" of UMDNJ if we were to apply the "relative nature of the work" test, which considers "control" as a single, but not dispositive, factor. *See New Jersey Property, supra,* 195 *N.J.Super.* at 10, 477 *A.*2d 826; *Marcus v. Eastern Agricultural Ass'n, Inc.,* 58 *N.J.Super.* 584, 597–603, 157 *A.*2d 3 (App.Div.1959) (Conford, J., dissenting), *rev'g on dissent,* 32 *N.J.* 460, 161 *A.*2d 247 (1960). Under this test, we must focus on "the extent of the economic dependence of the worker upon the business he serves and the relationship of the nature of his work to the operation of that business." 58 *N.J.Super.* at 603, 157 *A.*2d 3. Here, there is no question that defendants were economically dependent on UMDNJ, since that public entity paid defendants.

■ In considering the "relationship of the nature of [defendants'] work to the operation of [UMDNJ's] business," *ibid.,* we focus on whether the working relationship implicates social legislation where public policy considerations would dictate application of a standard broader than the "control" test. *Delbridge, supra,* 238 *N.J.Super.* at 321, 569 *A.*2d 854. As defendants persuasively argue in their briefs, UMDNJ was created through social legislation, *N.J.S.A.* 18A:64G–1 to –31, in order to provide a superior academic health center, an educational tool for residents, and a research and patient care service. The Legislature mandated a "public-private relationship" between UMDNJ and private and public health care providers, preserving a "structural flexibility" on the part of the university to "form productive and varied relationships with other health-care organizations." *N.J.S.A.* 18A:64G–2. The Legislature also granted UMDNJ a high degree of self-government. *N.J.S.A.* 18A:64G–3.1. In order to satisfy these statutory mandates, UMDNJ established a graduate rotating residency program, placing its house-staff residents with affili-

ated hospitals. These statutory goals can be fostered only if the residents are deemed employees of UMDNJ.

Affirmed.