701 A.2d 961

LINDA C. LOWE AND THOMAS LOWE, PLAINTIFFS–APPEL-LANTS, v. FARAMARZ C. ZARGHAMI, M.D., DEFENDANT-RESPONDENT, AND KENNEDY MEMORIAL HOSPITAL, DE-FENDANT.

Superior Court of New Jersey
Appellate Division

Argued October 7, 1997—Decided October 27, 1997.

Before Judges LONG, STERN and KIMMELMAN.

*Lawrence R. Cohan* argued the cause for appellants (*Anapol, Schwartz, Weiss & Cohan,* attorneys; *Mr. Cohan,* on the brief).

*Marc I. Bressman* argued the cause for respondent (*Budd, Larner, Gross, Rosenbaum, Greenberg & Sade,* attorneys; *Mr. Bressman* and *Michael S. Savett,* on the brief).

The opinion of the court was delivered by

KIMMELMAN, J.A.D.

This is a medical malpractice case which was dismissed as the result of the granting of defendant-respondent Dr. Faramarz C. Zarghami's motion for summary judgment on the ground that he

was an employee of a public entity and had not received timely notice of plaintiff's cause of action as required by *N.J.S.A.* 59:8–8 of the New Jersey Tort Claims Act (the Act), *N.J.S.A.* 59:1–1 to 12–3. Plaintiff claims that defendant was acting as an independent contractor at the time he performed the surgery alleged to constitute malpractice and that, in any event, under the "discovery rule," *see Lopez v. Swyer,* 62 *N.J.* 267, 272–74, 300 *A.*2d 563 (1973), and because of the existence of "extraordinary circumstances", *see Lamb v. Global Landfill Reclaiming,* 111 *N.J.* 134, 147–49, 543 *A.*2d 443 (1988); *N.J.S.A.* 59:8–9, there were sufficient reasons to permit the late filing of a notice of claim. We hold that defendant was acting as an independent contractor at the time of the surgery in issue. It is therefore unnecessary for us to consider whether the filing of a late tort claim notice should have been permitted.

Plaintiff was employed as a nurse at the Kennedy Memorial Hospital—Stratford Division (KMH), a non-state institution. Defendant was employed by the University of Medicine and Dentistry of New Jersey (UMDNJ), a public entity within the meaning of the Act. *Fuchilla v. Layman,* 109 *N.J.* 319, 330–31, 537 *A.*2d 652, *cert. denied sub nom., University of Medicine and Dentistry of New Jersey v. Fuchilla,* 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L.Ed.*2d 51 (1988). Defendant is an Associate Professor of Clinical Obstetrics and Gynecology at UMDNJ. UMDNJ pays his salary, which is not dependent upon hours billed or surgery performed. Defendant claims, and we accept, that his employment by UMDNJ is not evidenced by a formal written contract, but rather by two letters verifying his appointment as an Associate Professor. Upon being hired by UMDNJ, defendant was assigned to the south Jersey area and given staff privileges at KMH and several other hospitals. Such privileges permitted him to perform surgical procedures at those facilities. At that time, KMH had an affiliation arrangement with UMDNJ. Defendant maintained his office in a nearby building owned or leased by UMDNJ, which had an appropriate UMDNJ sign on its facade. The office was staffed by UMDNJ employees. Defendant wore an identification badge which indicated his connection with UMDNJ. Plaintiff was rec-

ommended to defendant by her personal physician, and saw defendant on two occasions in this office. It was determined that plaintiff needed surgery, and on September 26, 1994, she was admitted as a patient at KMH. On that date, defendant performed a radical hysterectomy on plaintiff. The foregoing factual recitation appears without dispute.

Following the surgery, it is alleged that plaintiff developed complications which required further surgery on December 15, 1994, by another doctor at KMH. At that time, a metal clip was found on plaintiff's right ureter [1] and removed. Additional surgery and four separate hospitalizations followed to treat plaintiff. In time, she came to believe that the metal clip was the cause of her problems and that defendant was responsible for leaving it in her body during the initial surgery. She consulted an attorney, which led to the institution of this action.

In his deposition, defendant acknowledged that his activities in the operating room at KMH were not supervised by UMDNJ at all. He noted that his practice at KMH was overseen by a "quality assurance committee" composed of physicians and persons connected with KMH. KMH's by-laws and internal procedures, and not those of UMDNJ, governed surgery performed at the hospital. During plaintiff's surgery, the attending nursing staff and anesthesiologist were assigned by KMH. The operating equipment used during plaintiff's surgery belonged to KMH. At the time of surgery, there was no representation or indication by defendant that he was acting on behalf of UMDNJ or following its surgical protocols. Defendant does not claim to have received advance approval from UMDNJ for the surgery.

It appears, and we accept as a fact, that plaintiff's medical insurer paid the fee for the surgery to UMDNJ, and the charges for plaintiff's hospitalization to KMH.

---

[1] A ureter is one of two tubes which convey urine from the kidneys to the bladder. *Gould's Medical Dictionary* 1423 (5th ed.1945).

On February 8, 1996, plaintiff filed her complaint for malpractice against defendant and KMH, which is not a party to this appeal. Her husband, Thomas Lowe, asserted a *per quod* claim for loss of her services. When defendant delivered a copy of the complaint served upon him to his employer, UMDNJ, it was the first notice that UMDNJ had of plaintiff's cause of action. Defendant promptly moved to dismiss the complaint on the grounds that plaintiff failed to file a notice of claim on UMDNJ, as required by the Act. *N.J.S.A.* 59:8-8. Plaintiff countered with the contention, among other arguments, that defendant was acting as an independent contractor at the time of the surgery, and because of that, the notice requirements of the Act were irrelevant to this case.

We address the issue of whether defendant was performing as an employee of UMDNJ or acting as an independent contractor at the time of the surgery.

Independent contractors are exempted from the definition of "employee" contained in *N.J.S.A.* 59:1-3 as follows:

"Employee" includes an officer, employee, or servant, whether or not compensated or part-time, who is authorized to perform any act or service; provided, however, that the term does not include an independent contractor.

■ In determining under the Act whether an employee is an independent contractor, our courts have adopted two tests defining the work relationship which must be balanced under the totality of the circumstances. *See New Jersey Property–Liability Ins. Guar. Ass'n v. State,* 195 *N.J.Super.* 4, 10, 477 *A.*2d 826 (App.Div.), *certif. denied,* 99 *N.J.* 188, 491 *A.*2d 691 (1984). The first factor which a court considers is the degree of control maintained by the employer at the time the act complained of is performed.

■ "Control" is recognized as the essence of a master-servant relationship. Under the "control" test, the master-servant relationship exists whenever the employer retains the right " 'to direct . . . not only what shall be done, but how it shall be done.' " *Id.* at 8, 477 *A.*2d 826 (quoting *Errickson v. F.W. Schwiers, Jr., Co.,* 108 *N.J.L.* 481, 483, 158 *A.* 482 (E. & A. 1932)). The master-

servant relationship does not exist where one contracts to do a piece of work according to his own methods, without being subject to the direction of his employer. *New Jersey Property–Liability, supra,* 195 *N.J.Super.* at 8–9, 477 *A.2d* 826.

■ With respect to the surgery performed by defendant upon plaintiff in this case, it appears that UMDNJ did not know of the planned surgery, and there is no doubt that UMDNJ did not control what was done or how it was done, in that it did not establish, maintain, or prescribe the rules and regulations governing the locus and performance of the surgical operation. UMDNJ became aware of the surgery after the fact, for the purposes of billing. Defendant's deposition testimony clearly indicates that he enjoyed, and was allowed by UMDNJ, complete autonomy when exercising his staff privileges at KMH. *Cf. Sloan v. Luyando,* 305 *N.J.Super.* 140, 701 *A.2d* 1275 (App.Div.1997) (holding that carpenter was not an independent contractor because he had no freedom to "decide when ... or how to accomplish the assigned work, or [to] choose what jobs to accept or reject").

We need not go beyond the "control" test and consider the "relative nature of the work" test which was formulated and adopted in *Marcus v. Eastern Agricultural Ass'n, Inc.,* 58 *N.J.Super.* 584, 597, 157 *A.2d* 3 (App.Div.1959) (Conford, J.A.D., dissenting, *rev'd on dissent,* 32 *N.J.* 460, 161 *A.2d* 247 (1960)). That test is considered when defining employer-employee relationships in the context of social legislation such as the Worker's Compensation Law. That law is designed to broaden the measure of recourse and protection for injured employees. *See Santos v. Standard Havens, Inc.,* 225 *N.J.Super.* 16, 25, 541 *A.2d* 708 (App.Div.1988). To the contrary, we here deal with the New Jersey Tort Claims Act, which is designed to limit, not broaden, governmental liability and should be construed accordingly. *See New Jersey Property–Liability, supra,* 195 *N.J.Super.* at 11, 477 *A.2d* 826. Accordingly, the analysis here should be based on the "control" test alone. *See id.* at 11, 477 *A.2d* 826.

In *Wajner v. Newark Beth Israel Med. Ctr.*, 298 *N.J.Super.* 116, 689 *A.*2d 143 (App.Div.1997), we recently considered whether house-staff residents, employed by UMDNJ but assigned to Newark Beth Israel Medical Center, were public employees entitled to immunity under the Act. There, the physicians being sued for malpractice were house-staff residents subject to a written employment agreement with UMDNJ which governed the terms and conditions of the residency program, regardless of the hospital to which they were assigned. *Id.* at 119, 689 *A.*2d 143. The employment agreement detailed the starting date and duration of the residency program, their salary, vacation benefits, and their responsibility to perform the day-to-day activities of the residency program under the supervision of members of Beth Israel's staff who were appointed members of the UMDNJ teaching faculty for that purpose. UMDNJ reserved the right to control the manner and means of their performance as residents, paid their salaries, and retained the power to discipline or discharge them. Significantly, the residents were members of a union that collectively bargained with UMDNJ. *Ibid.* Under these circumstances, we concluded that the trial judge's application of the "control" test in deciding that the residents assigned to Beth Israel were UMDNJ employees was legally sound and supported by the undisputed facts. *Id.* at 119–120, 689 *A.*2d 143.

In *Wajner*, we went on to consider the "relative nature of the work" test and we added, parenthetically, that the residents would also be deemed employees under that test, because they were wholly economically dependent upon UMDNJ, and because their work furthered UMDNJ's legislative mandate. *Id.* at 120, 689 *A.*2d 143. In the instant matter, while we recognize that defendant was economically dependent upon UMDNJ, and that his presence at KMH furthered UMDNJ's legislative mandate "to provide greater numbers of trained medical personnel to assist in the staffing of ... hospitals," *N.J.S.A.* 18A:64G–2, we must conclude, of necessity, that under the totality of the circumstances the "control" test is more directly relevant to this case than is the "relative nature of the work" test.

Defendant's relationship with UMDNJ permitted him to be his own boss, subject only to the rules and regulations of KMH, when deciding to undertake and perform surgical procedures at that hospital, notwithstanding that some of the funds realized from such procedures became part of UMDNJ's working capital. Any indicia of control retained by UMDNJ were ephemeral at best. The control so apparent in *Wajner* was wholly absent in the case of defendant. Defendant's presence at KMH helped satisfy the legislative mandate of UMDNJ, which is a positive factor under the "relative nature of the work" test in determining state employee status, but it does not detract from the free reign given defendant in his activities at KMH.

In sum, we conclude, limited to the facts recounted, that defendant functioned as an independent contractor when performing surgery on plaintiff. Notice of claim under the Act was not required.

The summary judgment entered February 7, 1997, dismissing plaintiff's complaint, is reversed. This matter is remanded for further proceedings in accordance with the Rules of Court.